Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff sues for the salary of the office of superintendent of Crater Lake National Park. Having been duly appointed, he had occupied the office for a considerable number of years, when, on June 7, 1913, he received a request from the Secretary of the Interior for his resignation. He declined to resign, protested against his removal, and de *331 manded that he be furnished with a statement in writing of the grounds for his removal. On June 24, 1913, he received a telegram from the Secretary notifying him that he had been removed, directing him to transfer all Government property to a designated person, who was appointed as his successor in office. He was further advised that his pay as superintendent would stop on June 30, 1913. He refused to relinquish the position or transfer the property to the new appointee, and was forcibly removed from the Government building by the Vnited States marshal in July, 1913, who seized the records and papers of the office. Since his removal the plaintiff has, periodically, as the salary became payable, made claim for the same. He has been willing and able to enter upon the discharge of the duties of the office from which he was removed.
The plaintiff took no steps to compel his reinstatement until April, 1915, when he filed a petition for a writ of mandamus to be directed to the Secretary of the Interior. That case reached the Supreme Court of the United States, and the petition for mandamus was denied. Arant v. Lane, Secy., 249 U. S., 367. It was held that the plaintiff’s delay in applying for remedial process amounted to laches, which barred any right to the relief sought, it appearing that another appointee had, meantime, been filling the office, performing its duties, and drawing the salary. The decision by the Supreme Court was rendered March 31, 1919, and on June 12, 1919, a petition was filed in this court claiming the salary of the office from July 1, 1913.
Plaintiff’s contention in the case mentioned was, and yet is, that he was in the classified civil service at and prior to the time of his removal and could not be removed therefrom by the Secretary of the Interior except upon compliance with the provisions of section 6 of the act of August 24, 1912, 37 Stat., 539, 555. That act provides that no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing; that the person whose removal is sought shall have notice of the same, and of any charges preferred against him, be furnished with a copy thereof, and be allowed a reasonable *332 time for personally answering the same in writing and affidavits in support thereof. It is also provided that “no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal.” It is required that copies of the charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office. Manifestly this act imposes a limitation upon the rule that the power of appointment implies the right to remove the appointee. The heads of executive departments or others who derive the right to make appointments from statutory enactment can lawfully exercise the right of dismissal only in conformity to the act of Congress prescribing the conditions of its exercise. The act makes specific provision against an unqualified right of removal of one in the classified civil service. See Keim’s case, 177 U. S., 290, 293. It is comprehensive and includes two general groups, both of whom must be in the classified civil service to be affected, (1) persons removed by the appointing power “ for reasons given in writing ” and (2) persons removed upon “ charges.” In either case the removal is authorized only “ for such cause as will promote the efficiency ” of the classified civil service, and the existence of that cause is made to rest ultimately in the honest judgment of the appointing power. It is not required that there be a hearing or trial, except as “in the discretion” of the officer making the removal, a trial or hearing may be allowed, the trial here contemplated not being the hearing which it is implied will be accorded to the answer to charges and the supporting affidavits. These, it is assumed, will be considered, and in that sense be heard. If the plaintiff’s position was in the classified civil service, as the act contemplates it, he was entitled to the benefits of the act mentioned. In his behalf it is insisted that its very terms imply that he was in the classified civil service, because, it is said, under the provisions of section 7 of the civil-service act, 22 Stat., 403, the only persons excluded do not include those in positions such as plaintiff held and that the rules of the Civil Service Commission, promulgated under the law, do not put plaintiff in the excluded class.
*333 The defendant contends that the “ classified civil service ” referred to is the competitive service, which it says was the salient feature of the reform secured by the original civil-service act of January 16, 1883, 22 Stat., 403; that the act of 1912 recognizes the right to appoint persons not in the competitive classification, and that the removal of such appointees is, therefore, unaffected by the limitations mentioned therein. As tending to sustain the view that Congress used the words in the popular and generally understood meaning of classified service, as being the competitive civil service, it is pointed out that in the several acts creating the Federal .Reserve Board, in December, 1913, 38 Stat., 251, 262; the Federal Trade Commission, 38 Stat., 717, 718; the Federal Farm Loan Board, 39 Stat., 360, 361, there are provisions authorizing the appointment of employees without regard to .the civil-service act of 1883, but providing that the President may place them in the “ classified service.” This provision, it is said, would be meaningless if by their appointment they had come under the protective influence of the act of 1912. Also, the defendant suggests that the Civil Service Commission, by Bule II, paragraph 3 of its rules, amended to January 1, 1918, recognizes that the places named upon the “excepted” list differ from positions in the regular classified or competitive service in both the manner of appointment and the rights of the appointee. Its contention is that the plaintiff was in the noncompetitive class and was not in the classified civil service contemplated by the act.
We have stated the contentions upon one phase of the question, but the view we take of this case renders it unnecessary to determine whether plaintiff was in the classified civil service, according to his contention, or entitled to the provisions of the act of 1912, or was in the excepted class as claimed by defendant.
The action here is for the salary of the office from which plaintiff was removed in June, 1913, and upon his removal another was appointed to the office, who has discharged its duties and received the salary.
It has been held that any right the plaintiff may have had to compel his restoration to office by a direct proceeding against the Secretary of the Interior became barred by his *334 own laches. Arant v. Lane, supra. The plaintiff held the office by appointment by the Secretary of the Interior, and was removed by a succeeding Secretary, without compliance with section 6 of the act above mentioned. Contemporaneously with plaintiff’s removal another person was appointed to the position, executed the oath of office, has discharged its duties, and been paid the salary during the whole of the period involved in this suit. The question for decision is whether the plaintiff can recover the salary of the office under the facts and conditions just stated.
The Wickersham Case, 201 U. S., 390, is not applicable, because Wickersham had been suspended, not by the appointing power, but by a subordinate official, who was without authority in that regard. He was not removed and another appointed to the vacated position. Pretermitting any consideration of the question whether he could have been summarily removed or suspended by the President, or other competent authority, as a question not before the court, the question in that case, as stated by Mr. Justice Day, in the opinion (p. 399), is “ whether the employee, during his wrongful suspension by a subordinate officer, is entitled to the compensation provided by law.” The case thus decided is widely different in facts from the one we are considering. An officer unlawfully suspended from his office is not dismissed from it, nor does he lose title to it, nor another fill it.
One of the cases cited with approval in Arant v. Lane is Stone v. Board of Commissioners, 164 Ky., 640. In that case the plaintiff, Stone, had been removed from office and, as stated in the opinion, “ his removal was unauthorized and illegal, because the commissioners have no power to remove a guard until after he has had a public hearing upon charges preferred against him in writing, and he can then be removed only for the causes, or one of them, specified in the statute as a ground for removal.” The officer who had been removed did not bring his suit for restoration until two years thereafter, and it was held that he lost by laches his right to the relief sought in his petition, though it stated a good cause of action and one that would have secured restoration but for the long delay.
*335 But the petition filed, by Stone also prayed that the defendants therein be required to certify to the auditor of public accounts the name of Stone for payment from the time of his wrongful dismissal; and the question we have here was therefore before the court, and considered in that case. After referring to several other cases where the right of an officer, unlawfully dismissed, to sue for the salary of the office, so long as it was vacant, had been upheld, the court thus states its conclusion:
“ The rule announced in these cases is that when an officer has been wrongfully removed from office, and no one has been appointed to fill the vacancy caused by his removal, or to perform with compensation the duties of the office from which he was removed, he may by timely action recover his salary during the period covered by his wrongful removal, but when the vacancy caused by his removal has been filled, or some other person has been appointed with compensation to perform the duties of the office from which he was removed, his right to the salary, in an action against the city or State, ends with the appointment of his successor.”
In Dolan v. Mayor of New York, 68 N. Y., 274, the question, as stated by Judge Andrews in the opinion of the court, was whether the plaintiff was entitled to recover the salary appurtenant to the office of assistant clerk during the whole, or any part, of the term in which he was excluded from the position, or the office, by Keating, acting under the illegal appointment of December 31, 1872. The facts showed that Dolan had been removed and Keating appointed to the position, and the power of the justice to remove an incumbent at pleasure and make a new appointment was a question upon which the courts differed, although it was finally decided that it did not exist. It is stated in the opinion that in appointing Keating the justice transgressed the limitation and exceeded his power. The court held that although Keating was an officer de facto, and, as such, may not have been able to maintain an action for the salary itself, had payment been resisted, the conclusion did not follow that the defendant was not justified in treating him as an officer de jure and paying him on that assumption, saying:
“ It is clear that if the city could rightfully pay the salary to Keating during his actual incumbency, and has paid it, *336 it can not be required to pay it again to the plaintiff. We are of opinion that payment to a de facto public officer of the salary of the office, made while he is in possession, is a good defense to an action brought by the de jure officer to recover the same salary after he has acquired or regained possession.”
To the same effect is Hagan v. City of Brooklyn, 126 N. Y., 643, where it was held that a public officer, unlawfully removed from office to which another person is appointed, and who acquiesces in such removal, and has not, by certiorari or otherwise, obtained a reversal of the order removing him, or a reinstatement in the vacated term by the board having authority to make it, can not recover from the corporation the compensation incident to the office accruing during the period in which he performed no service.
Selby v. City of Portland, 14 Oregon, 243, is the case of an officer wrongfully removed, who sued for salary. The place from which he was removed was filled by the appointment of another person, to whom the salary was paid. The court discusses some cases in other courts, apparently holding a contrary view, but points out that in none of such cases was it admitted that an action to recover the salary could be maintained while the office was occupied by a de facto officer until the right to the office has been determined by proper adjudication. This question, it was said, could not be determined in an action for salary, because it would determine the rights of parties not before the court, the succeeding incumbent or de facto officer being entitled to be heard on the question of the right to the office. The officer’s right to recover the salary was denied.
In People v. Burdett, 283 Ill., 124, it was held that a de jure officer could not recover the salary of an office during the period of his suspension which had been paid to a de facto officer who discharged the duties, following the ruling in People v. Schmidt, 281 Ill., 211.
In Lee v. Wilmington, 1 Marvel (Delaware), 65, the question is elaborately discussed with a review of the authorities, and it is held that as the plaintiff was not in actual posses: sion of the office, nor discharged any of its duties, and another person had performed the same under appointment, *337 whether regular or irregular, and been paid the salary, the defendant could not be required to pay it a second time.
Coughlin v. McElroy, 74 Conn., 397, is another case which collates the authorities on the question and holds, with the current and weight of authority, that an action for salary can not be maintained when it has been paid to a de facto officer who discharged the duties. See also Brown v. Tama Co., 122 Iowa, 745; Saline County Commissioners v. Anderson, 20 Kans., 298; Wayne County v. Benoit, 20 Mich., 176; Parker v. Dakota County, 4 Minn., 59; Hunter v. Chandler, 45 Mo., 452; McDonald v. Newark, 58 N. J. Law, 12; Samuels v. Harrington, 43 Wash., 603; Throop, Public Officers, 510; State v. Moores, 70 Nebr., 48, 57.
It is not unusual for a suit to be brought in this court by an officer to recover salary. One of these, Lellmann v. United States, 37 C. Cls., 128, is approved in the • Wicker-sham case, and was the case of an officer unjustly suspended without charges, whose suspension was afterwards revoked. Drawing a distinction between the period of suspension and that of his dismissal, or “ permanent suspension,” the court held, in an opinion by Judge Weldon, that he could recover salary for the period of suspension and could not recover for the other period. But his position during his suspension was not filled by the appointment of another person. On the other hand, in Barbour’s case, 17 C. Cls., 149, an officer suspended under the operation of section 1768, Revised Statutes, whose position was not filled, was denied the salary of the office during the period of suspension, or any time, because he had abandoned the office, not having made any protest or brought suit for nearly four years.
The Perkins case, 20 C. Ols., 438, affirmed by Supreme Court, 116 U. S., 483, arose out of the wrongful dismissal of a naval officer contrary to the provisions of section 1229, Revised Statutes. He sued for the salary of his office for two months, the attempted removal having taken place in June, 1883, effective the last day of that month, and he having protested against the same in a few days thereafter. He seasonably brought suit for the salary, and recovered the pay for the two months intervening between the discharge and suit. No one had been appointed to or filled the office in the *338 meantime. Other cases involving suspensions from office are Corcoran, 38 C. Cls., 341; Wertz, 40 C. Cls., 397; Steele, Ib., 403; Stilling, 41 C. Cls., 61. The distinction between a mere suspension from office and an absolute dismissal is manifest. When, however, an attempted removal has been made and the officer sues for the salary, he necessarily puts in issue his right to the office. It was held by this court in Romero's case, 24 C. Cls., 331, in an opinion by Chief Justice Richardson, that one claiming a salary must prove his legal title to the office, and that only an officer de jure can main-, tain an action for salary. This ruling has been followed in other cases, Morey case, 35 C. Cls., 603; Jackson case, 42 C. Cls., 39. But the title to an office which is claimed by two persons can not be determined in a suit by one of them for salary. The jurisdiction to determine the title is exercised either by certiorari, mandamus, quo warranto, or its statutory substitute, or by some other extraordinary remedy. In re Sawyer, 124 U. S., 200, 212. The person in possession of the office, and exercising its duties, is entitled to a hearing on the question of his right to the compensation provided, and to the office as well, and such a hearing can not be accorded in an action for salary alone, or in the Court of Claims at all. When a wrongful removal is made or attempted, and no one is appointed to the supposed vacancy, the'officer who can show the unlawfulness of his removal, and that he- is entitled to the office, has been allowed to sue for and recover the salary. The Perkins case, supra, is one of that kind. But the authorities above cited, holding that where there is an appointee in charge and being paid the salary of the office the discharged officer must first establish his right to the office before he can recover any salary, proceed upon the principle just stated that the successor can not be ousted without a hearing; that the Government is not to be made liable for two salaries to one office and one service, and that a disbursing officer can not be expected to determine the validity of the appointment of a person who holds a commission or has been appointed, has qualified, and is an actual incumbent of the office. This may at times result in apparent hardship to the officer unlawfully removed, though the instances are probably rare where it occurs at all; but *339 the fact of hardship can not authorize a court to say that an officer shall be paid the salary of an office in face of the other fact that it has been paid to another person who has discharged all the duties. The Government should not be required to pay twice, once a salary without service and the other time for service, because of the mistake or wrongful act of the head of the department. As to whether it was wrongful in this case we express no opinion. There is a principle applicable to Governments that forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizens. Gibbon’s case, 8 Wall., 269, 275.
Where, as in the instant case, the plaintiff has lost by his laches a right to try the title to the office from which he was removed, and another appointee has discharged the duties and been paid the salary it is plain, under the cases we have cited, as well as upon the authority of the Nicholas case, ante, p. 188, that the action for salary can not be maintained, and plaintiff’s petition should be dismissed. And it is so ordered.
Gkaham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.