Hay, Judge,
delivered the opinion of the court:
The plaintiff was duly appointed as postmaster at Portland, Oreg., on April 24,1913, and after the expiration of his *202 first term he was again appointed as such postmaster on September 4,1917, for a four-year term from July 21, 1917. This appointment was confirmed by the Senate of the United States, and after qualifying as such postmaster he entered upon the duties of his office.
On January 22, 1920, the First Assistant Postmaster General requested the plaintiff to resign his office, which the plaintiff declined to do. On February 2, 1920, the Postmaster General telegraphed plaintiff that an order had been issued by the President of the United States removing him from the office of postmaster at Portland, Oreg., and that in accordance with the postal laws and regulations a post-office inspector would take charge of his office. The plaintiff on the same day telegraphed the Postmaster General that no vacancy existed in his office, that he had not resigned, and would not do so, and that his removal was contrary to law, and was therefore ineffectual. The inspector took charge of the office on February 3,1920, and drew his salary as inspector, and not as postmaster, and the salary of the postmaster was not paid to anyone while the inspector was in charge of the office.
The plaintiff was removed from his office by the President on February 3, 1920; the Senate was then in actual session. The Senate continued in session until it adjourned on June 5, 1920. During that time the President did not communicate to the Senate the removal of the plaintiff nor request the Senate to consent to his removal, nor did he nominate a successor to the plaintiff.
On August 26, 1920, the Senate not being in session, the President appointed John M. Jones as postmaster at Portland, Oreg., and on September 19, 1920, Jones took office under that appointment as postmaster.
Congress convened in regular session December 6, 1920. That session expired by operation of law March 4, 1921, without any appointment of plaintiff’s successor by or with the advice and consent of the Senate.
The Sixty-seventh Congress was in session from April 11, 1921, until August 24, 1921, when it recessed until September 21, 1921, convening on that day and continuing in session to November 23, 1921. On July 21, 1921, the term of *203 the plaintiff under his second commission expired. At neither of these sessions did the Senate act upon the plaintiff’s removal from office or upon the appointment of his successor.
The plaintiff insists that his removal from his office was without authority of law and void; and he sues for the salary of the office from January 31, 1920, to July 21, 1921, the date of the expiration of his term of office, and claims that there is due him the sum of $8,838.72, the amount of salary for the period mentioned.
The plaintiff relies upon the following statute:
“ Postmasters of the first, second, and third classes shall be appointed and may be removed by the President, by and with the advice and consent of the Senate, and shall hold their offices for four years unless sooner removed or suspended according to law; and postmasters of the fourth class shall be appointed and may be removed by the Postmaster General, by whom all appointments and removals shall be notified to the Auditor for the Post Office Department.” (Act of July 12,1876,19 Stat. 80.)
Under the provisions of this statute the plaintiff contends that his removal from office could only be effected by and with the advice and consent of the Senate, and that as the Senate did not act upon his removal from office during his term of office the removal was illegal and void, and that he is entitled to receive the salary of the office from the date of his removal until the expiration of his term of office.
The defendant contends that by virtue of the power vested in him by the Constitution the President had the right to remove the plaintiff from his office during his term of office, notwithstanding the provisions of the statute above quoted, which provides that postmasters of the first, second, and third classes * * * may be removed by the President by and with the advice and consent of the Senate.. In other Avords, it is asserted that the statute is unconstitutional and can not deprive the President of the power conferred upon him by the Constitution.
The provisions of the Constitution with which we are concerned are as follows: Article II, section 1, reads as follows: “ The Executive Power shall be vested in a President of the *204 United States of America,” and the same article, section 2, clause 2, provides: He sliall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law; hut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.”
The office held by the plaintiff is an office not provided for in the Constitution, but is established by law, and is one of the appointments which must be made by the President by and with the advice and consent of the Senate.
The Constitution is silent with regard tx> removal from office and does not say whether a removal may be made by the President alone or whether the removal must be by and with the advice and consent of the Senate. This question is not a novel one and has been discussed in Congress and by Presidents in their messages from the beginning of the Government and in the decisions of the Supreme Court of the United States.
In Ex parte Hennen, 13 Pet. 230, 259, Mr. Justice Thompson in delivering the opinion of the court says: “ In the absence of all constitutional provision, or statutory regulation, it would seem to be a sound and necessary rule to consider the power of removal as incident to the poAver of appointment. This power of removal from office was a subject much disputed, and upon which a great diversity of opinion was entertained in the early history of this Government. This related, however, to the power of the President to remove officers appointed with the concurrence of the Senate, and the great question was, whether the removal was to be by the President alone, or with the concurrence of the Senate, both constituting the appointing poAver. No one denied the power of the President and Senate, jointly, to remove, where the tenure of the office Avas not fixed by the Constitution, *205 which was a full recognition of the principle that the power' of removal was incident to the power of appointment. But it was very early adopted, as the practical construction of the Constitution, that this power was vested in the President alone. And such would appear to have been the legislative construction of the Constitution. For in the organization of the three great Departments of State, War, and Treasury, in the year 1789, provision is made for the appointment of a subordinate officer by the head of the department, who should have the charge and custody of the records, books, and papers appertaining to the office, when the head of the department should be removed from the office by the President of the United States. 1 Story, 5, 81, 47. When the Navy Department was established in the year 1798, 1 Story, 498, provision is made for the charge and custody of the books, records, and documents of the department, in case of vacancy in the office of Secretary, by removal or otherwise. It is not here said, by removal by the President, as is done with respect to the heads of the other departments; and yet there can be no doubt that he holds his office by the same tenure as the other Secretaries and is removable by the President. The change of phraseology arose, probably, from its having become the settled and well-understood construction of the Constitution, that the power of removal was vested in the President alone, in such cases, although the appointment of the officer was by the President and Senate.” In the case of Blake v. United States, 103 U. S. 227, Mr. Justice Harlan in delivering the opinion of the court discusses the question at great length, and quotes with approval from Ex parte Hennen, supra. See especially page 232, where he quotes the opinion of the Attorney General.
In the case of Parsons v. United States, 167 U. S. 324, 330, Mr. Justice Peckham, in delivering the opinion of the. court, discussed the question of the President’s power of removal, and after reciting at some length the debate on the subject in the First Congress of the United States, and its result, he said: “ Many distinguished lawyers originally had very different opinions in regard to this power from the one arrived at by this Congress, but when the question was al *206 luded to in after years they recognized that the decision of Congress in 1789, and the universal practice of the Government under it, had settled the question beyond any power of alteration.” In the same case (p. 331) the learned justice also quoted Mr. Webster as follows: “ I regard it as a settled point, settled by construction, settled by precedent, settled by the practice of the Government, settled by legislation.” After considering at some length the tenure of office acts and their repeal, and the effect of section 769 under which Parsons claimed that he was illegally removed from his office, the learned justice says: “ We ai'e satisfied that its [Congress] intention in the repeal of the tenure of office sections of the Revised Statutes was again to concede to the President the power of removal if taken from him by the original tenure of office act, and by reason of the repeal to thereby enable him to remove an officer when in his discretion he regards it for the public good, although the term of office may have been limited by the words of the statute creating the office.”
Plowever, the Supreme Court has never directly passed on the validity of the tenure of office acts. The question has been expressly saved. Wallace v. United States, 257 U. S. 541, 545. Such being the case, and the Supreme Court having “ expressly saved ” the question, and there being “ doubt and discussion ” as to the validity of these acts, the doubt should be resolved by this court in favor of the power of Congress; and this court will not declare a statute unconstitutional, especially in view of the declaration by the Supreme Court that the question is a doubtful one.
Aside from this view the plaintiff can not recover because the action of which he complains was taken in February, 1920. This suit was brought April 25,1921. If any right of action for salary arose out of the action complained of the delay is fatal to any recovery. Norris case, 257 U. S. 77; Nicholas case, Ib. 71; Arant v. Lane, 249 U. S. 367; Arant case, 55 C. Cls. 327. The petition should be dismissed.
It is so oi’dered.
Graham, Judge; DowNby, Judge; Booth, Judge; and Campbell, Chief Justice, concur.