Whitaker, Juclge,
delivered the opinion of the court:
On December 31, 1937, plaintiff was a clerk, outside civil service, in the Quartermaster Corps of the War Department, Camp Custer Civilian Conservation Corps District, with salary payable from funds of the Civilian Conservation *339 Corps. On that, date he was dropped from the service in the course of a reduction of personnel. He was reinstated on May 24,1988. He sues to recover his salary in the interim, amounting■ to. $641.25, on the allegation.that his dismissal was unlawful.
Apparently, it is his insistence that it was 'unlawful because of the provisions of section 4 of the .Appropriation Act for 1912, c. 350, 37 Stat. 360, 413, and of .section 5 of Civil Service rule XII, and of Departmental Circular 146 of the Ünited States Civil Service Commission,, dated October 22, 1936.
Section 4 of the Aet referred to directs‘the Civil Service Commission to establish a system of efficiency ratings “for the classified service in the several executive departments in the District of Columbia. * *•. *” It provides that all promotions, demotions, or dismissals shall be governed by' civil service rules,, and. contains this, proyiso, upon which plaintiff relies
In the event .of reductions being, made in the force of any pf the executive departments no honorably discharged soldier or sailor whose record in said department is rated good shall be discharged or .dropped, or reduced' in rank Or -salary.
This statutory provision was followed by Civil Service rule XII, sec. 5, reading as follows:
In harmony with statutory provisions, when reductions are being made in the force, in any part of the classified service, no employee entitled to military preference in appointment shall be discharged or dropped or reduced in Tank or salary if his record is good; or, if his efficiency rating is equal to that' of any employee in competition with- him who is retained in the service.
Both the statute and the rule plainly relate only to the classified civil service and, therefore, do not relate to plaintiff, who was appointed -outside civil service.'
But he says both the statute and the rule were made applicable to persons outside civil service by Circular No. 146 of the Civil Sérvice Commission, the first paragraph of which reads as follows:
Attention is respectfully invited to the 'fact that in making a reduction in force, even in an organization *340 -excepted from the Civil Service Act and ■ Rules, it- is necessary to observe the retention preference laws. The Acts of August 15, 1876 (19 Stat. 169), and August 23, 1912 (37 Stat. 413), grant preference of retention to ex-service employees at the seat of Government who are equally qualified with non-service employees being retained or whose records are good.
The Circular then quotes section 5 of Civil Service Rule • XII, and proceeds:
' ■ .The President of the United States has informed the Civil Service Commission that it is his desire that in making any reductions of force the civil-service' rules be Applied by all agencies which are going to be on a germanent basis. • The provisions of section. 5 of Civil ervice Rule XII should, therefore, be applied regardless of the place of employment, and should also be applied in the regular branches of the Government in making reductions in force in excepted positions.
It may be said in the beginning that the provisions of this circular can confer on plaintiff no right to his office or position Unless, in any event, its provisions were authorized by the President. Nowhere is the Civil Service Commission given the power to prescribe rules regulating the appointment and removal of employees, except those employees who come within the classified civil service. Our attention has been directed to no order of the President extending civil service rules to persons outside the classified civil service. The only action taken by him with reference thereto is that indicated by this Circular No. 146, which recites:
The President of the United States has informed the Civil Service Commission that it is his desire that in making any reductions of force the civil service rules be applied by all agencies which are going to be on a permanent basis.
The first question presented, therefore, is whether or not plaintiff was an employee of such an agency. Plaintiff’s case depends upon an affirmative answer to that question. If the answer is in the negative, plaintiff acquired no right by virtue; of Circular No. 146, even though the Civil Service Commission stated therein that it was necessary that the retention preference laws be observed by an organization *341 excepted from the Civil Service Act. There is no showing that the President authorized it to promulgate such an order; ñor is there any showing that the President authorized it to extend the provisions of section 5 of Civil Service Rule XII to persons holding excepted positions in the regular: •branches of the Government.
Was, then, the plaintiff an employee of an agency which was going to be on a permanent basis, and if that question' is answered in the affirmative, did the President have power-to extend the Civil Service Act and rules to persons excepted therefrom by Congress ?
At the time of his dismissal plaintiff held a temporary ■ position under an emergency appointment in the Quartermaster Corps of the War Department with salary payable from the funds of the Civilian Conservation Corps. The Quartermaster Corps of the War Department is of course a regular branch of the Government and, therefore, the Presi- • dent’s instruction, if such it can be termed, that the civil service rules should be applied to agencies about to gó oh a permanent basis, would have no application to plaintiff as one of its employees, unless because he was paid from funds of the Civilian Conservation Corps; that is to say, -Unless plaintiff can be treated as an employee, not of the War Department, but of the Civilian Conservation Corps. We do' not think he can be so regarded.
The Civilian Conservation Corps was established by the' Act of June 28, 1937, c. 383, 50 Stat. 319.. It had formerly operated under the Emergency Relief Act of 1933 ,(c. 30, 48 Stat. 55). Under the Act of June 28, 1937, in force at the time of plaintiff’s discharge, the Director of the Civilian Conservation Corps was authorized to utilize the services of such departihents of the Government as he deemed necessary in' carrying out the purposes of the Act, and when such departments were used, the Director was given authority to allocate to them funds appropriated for carrying bn the work of the Civilian Conservation Corps. Pursuant to this power money was allocated to the War Department and'plaintiff wás paid out of these funds; but, nevertheless, he was an employee of the War Department, and not of the Civilian Conservation Corps. That Corps had no control or super *342 vision over plaintiff; he was subject only to the orders of the War Department. He was not an employee of one of those “agencies which are going to be On a permanent basis.”
..Moreover, the Acts under which the Civilian Conservation. Corps functioned show on their faces that that agency was merely temporary and there is no proof to show it was to be put on a permanent basis. For this reason, also, plaintiff has not shown that he acquired whatever benefits may have been conferred by Circular No. 146.
But. even if plaintiff might be regarded as an employee of the Civilian Conservation Corps, and even though it had. been shown that this Corps was one of those “agencies which are, going to be on a permanent basis,” we do not think that he is entitled to the benefits óf the above.quoted section 5 of. Rule XII, because the Civilian Conservation Corps,Act authorises the appointment of civilian personnel “without regard to the civil service law and regulatiohs.”
.The Civilian Conservation Corps was a temporary organization created under emergency legislation to relieve unemployment; it was shortly to be discontinued, and evidently Congress did not intend that its employees should acquire the status of employees in permanent agencies under the classified civil service. The authorization was to appoint employees, but that authorization was coupled with the proviso that such employees should not acquire civil service status. •
In 32 Op. A. G. 274, the Attorney General said:
■ Where a statute creates a position in the executive /■civil service, appointments to which áre -not .subject ■ ,to confirmation by the Senate and which is not that of a mere laborer or workman, that position must be filled m accordance with the Civil Service Act and Bules un- ' less the statute clearly indicates an intention to the ■'contrary. But Congress may authorize certain positions to be filled without regard to the Civil Service . Act. and Rules, and where it has done so it has itself determined that the public welfare will •■be best prompted if the discretion of the appointing officer in ' making appointments to and removals from those posi- ’, tions is unrestricted.
*343 We are of opinion that Congress intended that such employees should not secure the protection against removal accorded to employees in the classified, civil service. If this was in fact the intention of Congress, the President was. without power to give to such employee a right of action against the United States .in case the rules applicable ¡to employees in the classified civil service were violated.
It was recognized by this court and by the Supreme Court in Perkins v. United States, 58 C. Cls. 199, 116 U. S. 483, that under section 2 of Article II, of the Constitution Congress in granting the power of appointment of inferior officers to the heads of departments may limit and restrict the .power of their removal as it deems best for the public interest. In that case the Supreme Court adopted the- following language from our opinion:
* * * We have.no doubt that when Congress by law vests the appointment of inferior officers;in the heads of departments, it may limit and restrict. the power of removal as it deems best for the public interest. The constitutional authority in Congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as- Congress may .enact in relation to the officers so appointed. . The head of. a department has no constitutional preroga-' five of appointment to offices independently of the legislation of Congress, and by such legislation he must be governed, not -only in making appointments but in' all that is incident thereto. .. .. : - .
-This was later approved by the Supreme Court in Myers v. United States, 272 U. S. 52, 160.
In the case at bar Congress has said that employees appointed under the Civilian Conservation Corps Act by-the Director may be removed at the will of the appointing power, and it has given the same power to the Secretary of War. When so removed, they have been removed in the manner provided for by Congress and, -therefore, have rio cause of action against the- .United States. - The President cannot create hi this employee a right of action against the United States not given him by .Congress.
Undoubtedly, the President has the right to formulate rules for the guidance of his subordinates in their dealings *344 with their employees,'and he can direct them to give preference to honorably discharged veterans in reducing their force, but he cannot by so doing confer on such employee a right' of action against the United States not given hiiiV by 'Congress.
In 37 Op. A. G. 13, the Attorney General said:
When Congress provides that a position shall not be subject to the provisions of the Civil Service Act and Eules, it discloses its intention that a person ap-' pointed to such a position shall not be entitled to the benefits of the Civil Service Act and Eules with respect to his employment in the excepted position. Accordingly, he is not while holding such position entitled to the benefits of the Eetirement Act nor to security of tenure he would have enjoyed had the position not been-excepted by law. ■' :
We do not think the opinion we have expressed is in conflict with the decision of the Supreme Court in United States v. Wickersham, 201 U. S. 390. The plaintiff there-had been placed in the classified civil service by order of the President and the act of the Secretary of the Interior in pursuance thereof. This was done in pursuance of the power granted by the Civil Service Act of January 16, 1883 (22 Stat. 403) directing the heads of the departments, “on the direction of the President” to classify their employees, and authorizing him to provide rules and regulations for appointments to the positions so classified. As an incident of that power of appointment, he was authorized to make rules and regulations governing their removal. Ex parte Hennen, 13 Pet. (U. S.) 230; Blake v. United States, 103 U. S. 227; Keim v. United States, 177 U. S. 290; Shurtleff v. United States, 189, U. S. 311; Burnap v. United States, 252 U. S. 512; Myers v. United States, supra. Among those regulations was one reading: ,: ,
No removal shall be made from any position subject to cpmpetitive examination, except for just cause and upon written charges filed with the head of the department or other" appointing officer, and of which the accused shall have full notice and an opportunity to make defense. ■ ■
*345 The court held that the .plaintiff , was entitled to the benefits of this order, and that, haying been discharged contrary to it, he was entitled to recover,the compensation of which he had been deprived. But the order of the President in the Wicieersham case was made in' pursuance of authority granted by Congress. In the case at bar Congress has said that this employee could be removed at will, and it follows that if so removed, he has no right of action against the United States.
For many years the Civil Service Commission and the executive departments have believed it to be beyond the power of the President to place under civil service persons excepted therefrom by Congress. In order to give him this power, Congress passed the Act of November 26, 1940, c. 919, 54 Stat. 1211. Under this Act the President was authorized “notwithstanding any provisions of law to the contrary, * * * by Executive order to cover into the classified civil service any offices or positions in or under ah executive department, independent establishment, or other agency of the Government * * * . If the President- already had this power, the passage of this Act was useless. •
On December 31, 1931, when plaintiff was discharged,- the .President did not have power to give him the rights to which members of the classified civil service were entitled. We seriously'doubt if he meant to undertake to do so. Circular, 146 of the Civil Service Commission does no more than recite a “desire” on the part of the President that - civil service rules be applied by certain' agencies. This amounts, we think, to nothing more than an expression of a wish on his part that these agencies do so. From it, we do not think .there can be gleaned an effort on his part to confer on the employees of such agencies A right of action against the -United States if these rules were not complied with.
However, the Appropriation Act of 1876 (c. 287, 19 Stat. 143,169) provides:
In making any reduction of force in any of the ex--écutive departments,'the head of such department shall retain those persons who may be equally qualified' who have been honorably discharged from the military or naval service of the United States, and the widows and orphans off deceased soldiers and sailors.
*346 This 'statute was passed sometime prior to the establishment; bf ' (he Civil Service Commission and applies to all civil'; eiñployees in the executive departments. It would appear,' therefore, that plaintiff’s dismissal was contrary tó law,.if he was equally qualified with those who were -retained ; but there is no competent evidence' in the record on this, question and the plaintiff’s case must fail, therefore, for want of proof.
On the taking of testimony plaintiff was not represented by counsel; he was questioned by the commissioner and by defendant’s attorney. No appearance was made for him when the case came on for argument. On the hearing defendant’s attorney introduced in evidence, for some reason not apparent to the court, a photostatic copy of the War Department’s file on this case. This was offered with this reservation:
While the decisions of the court are to the effect that such reports, or rather the contents of such reports, are not'competent evidence and are not admitted for that reason, I am, however, permitting this report to go in evidence with her consent.
(The reference is to the consent of plaintiff’s attorney to whom the case was originally assigned, but who was ill at the time téstimony was taken.)
The parties having consented that this file be received in evidence,' we have examined it to see what is disclosed on the question of whether or hot the'plaintiff was equally qualified with those who were retained.-
It shows that an order was issued by the Headquarters, 6th Corps Area, directing the reduction in force of civilian employees of Camp Custer Civilian Conservation Corps from 122 to; 48.' As a result thereof, Captain Passink, the District Quartermaster, directed First Lieutenant Rackes, who was plaintiff’s immediate superior, to submit the names of five of his civilian employees for discharge. Among the ñames submitted was the plaintiff’s.
. Plaintiff protested against his discharge, and enlisted the services of both Senator Prentiss Brown of Michigan and of the American Legion to secure his reinstatement. A number of letters appear in the file from Senator Brown *347 and from John Thomas Taylor, the Director of the National Legislative Committee of the American Legion: The:,case reached the office of the Secretary of War, who eventually directed the Inspector General to make an investigation. One of his assistants examined a number of witnesses, 27 in all, including the plaintiff and those called by him, and concluded, among other things — '
Because Lieutenant ¡Rackes believed that Mr. Brim-berry was not as efficient as the,employees chbsep. for retention, and that the remaining personnel would fuñe-. tion more harmoniously without Mr. Brimberry1,' the latter’s discharge was recommended by Lieutenant Rackes.
Hí sfc ❖ & ,❖
* * * this officer was justified in arriving at the. conclusion that his section would'be improved-by dispensing with the services of Mr. Brimberry.
Plaintiff worked in the supply office; he was in charge ,of one section of it. A Mr. Eadler, another ex-service man, was in charge of another section, and. Mrs. Bond was.in charge of a third. Only these three employees had a rating of CAF-3, and they were the only ones acting in a supervisory capacity. When the order came through for a reduction in force, Lieutenant Rackes had to determine which one of the three should go. He determined that the good of the service would be served best by letting plaintiff go. His action evidently was not arbitrary or capricious nor inspired by dislike for the plaintiff, as the Inspector General found. Captain Passink, Lieutenant Rackes’ superior, testified that he and Lieutenant Rackes—
* * * spent a great deal of time discussing it back and forth. It wasn’t a snap judgment. At the time of reduction of force, we spent more time discussing Mr. Brimberry’s case than we did of all- the other employees, due to the fact that he was a veteran. * * * ' '•
He says that they determined that the plaintiff’s, efficiency ■rating was not equal to the other members of their force in Brimberry’s classification; that Mr. Brimberry had hád no experience in the work being done by Mr. Eadler and! Mrs. Bond, and that they thought that the. two latter persons could best carry on the combined work.
*348 Major Putnam, the District Commander, says that he discussed . plaintiff’s dismissal with Captain- Passink and Lieutenant Rackes and approved it. He concluded his testimony -with this statement:
I and Captain Passink and Lt. Rackes anticipated .this. Therefore, we gave this case, in particular and in general, five times as much thought to the termination of Mr. Brimberry’s services to that of any other person and.I still am of the opinion that wé were right and that Mr. Brimberry was not unfairly treated.
The determination of whether or not Mr. Brimberry was equally qualified with those retained was committed to his superiors and this court has no authority to review that determination. Keim v. United States, 177 U. S. 290; Bratton v. United States, 90 C. Cls. 604.
We’conclude from an examination of this file that plaintiff’s superiors determined that he was not equally qualified with those- retained and that this determination was fairly and impartially made. If so, there has been no violation of the Act of 1876, supra.
For the' reasons stated, plaintiff’s petition will be dismissed. It is so ordered.
Madden, Judge/ Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur. -