## KEIM *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 57.   Submitted March 5, 1900. — Decided April 9, 1900.

Keim was honorably discharged from the military service by reason of disability resulting from injuries received in it.   He passed the civil service examination, and, after service in the Post Office Department, was transferred to the Department of the Interior at his own request.   Soon after he was discharged because his rating was inefficient.   No other charge was made against him.   *Held* that the courts of the United States could not supervise the action of the head of the Department of the Interior in discharging him.

THIS case comes on appeal from a decree of the Court of Claims dismissing appellant's petition.   33 C. Cl. 174.   The findings of that court show that petitioner was on April 17, 1865, honorably discharged from the military service of the United States by reason of disability resulting from injuries received in such service.   He passed the civil service examination, and on May 7, 1888, was appointed to a clerkship in the Post Office Department.   On March 16, 1893, at his own request and on the certificate of the Civil Service Commission, he was trans-

ferred to the Department of the Interior, and assigned to a clerk-ship in class 1 in the Pension Bureau, with a salary of $1200 per year. On March 1, 1894, his salary was reduced to $1000 per annum, at which salary he continued to serve to July 31, 1894, when he was discharged, and has not since been permitted to perform the duties of his clerkship, although ready and willing to do so. The discharge by the Secretary of the Interior was made upon this recommendation from the Commissioner of Pensions: "The discharge of Mr. Morris Keim was recommended because of his rating as inefficient. No other charges are made against him. William Lochren, Commissioner." The fourth and sixth findings are as follows:

"IV. At the time of his said discharge the requirements of the public service in said Pension Bureau demanded the retention of a clerk in plaintiff's place; the Secretary of the Interior, upon the recommendation of the Commissioner of Pensions, retained at the time of plaintiff's discharge, and now retains, other clerks of the same division who have received since plaintiff's discharge, and are now receiving, the same salary, to wit, $1000 per annum (one receiving $1200 per annum), who have not been honorably discharged from the military or naval service of the United States, and who are not shown to this court, except as in these findings set forth, to have possessed at the time of plaintiff's discharge better or inferior business capacity for the proper discharge of the duties of their said offices than the qualifications for the said duties possessed by plaintiff at that time. On or about the day plaintiff received notice of his discharge additional clerks were appointed to duties in the same division in which he served in said bureau who never rendered any military or naval service. It does not appear that any of these clerks were regarded or reported as inefficient by any superior officer; nor does it appear that those so retained or those thereafter appointed possessed better, or equal, or inferior qualifications for the discharge of the duties of their respective offices than those possessed therefor by the plaintiff."

"VI. There is no evidence that the plaintiff made any effort to secure other employment, or that he has, or has not, been employed at any kind of work from and after his said discharge

July, 1894. Nor is there evidence as to the difference in amount between his salary while in the government service and any moneys he might have earned or could have reasonably earned or has earned in other ways since his said discharge."

The petitioner requested additional findings, of which the only portions material to this inquiry are in the latter part of finding 3, that " he was formally discharged from said service, without any fault of his own, and without just cause, and has not since said last-named date been permitted to discharge the duties of said clerkship, although he has at all times, since said last-named date, stood ready and willing to discharge the duties thereof." And finding 5 : " That petitioner was at the time of his so-called discharge an efficient clerk, and discharged his duties faithfully and efficiently, and at the time of his said discharge he possessed and now possesses the necessary business capacity for the proper discharge of the duties of said clerkship."

These findings the court declined to make, " deeming said requested findings, if true, to be irrelevant to the issue presented."

*Mr. John C. Chaney* for appellant.

*Mr. Assistant Attorney General Boyd* for the United States.

MR. JUSTICE BREWER, after stating the facts, delivered the opinion of the court.

Upon these facts we are asked to decide whether the courts may supervise the action of the head of a department in discharging one of the clerks therein.

It has been repeatedly adjudged that the courts have no general supervising power over the proceedings and action of the various administrative departments of government. Thus, in *Decatur* v. *Paulding*, 14 Pet. 497, 515, in which was presented the question of the right of the Circuit Court of the District of Columbia to issue a writ of mandamus to the Secretary of the Navy to perform an executive act not merely ministerial but

involving the exercise of judgment, it was said by Chief Justice Taney :

" The court could not entertain an appeal from the decision of one of the Secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer and guide and control his judgment or discretion in the matters committed to his care in the ordinary discharge of his official duties. . . . The interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief ; and we are quite satisfied that such a power was never intended to be given to them."

The same proposition was reaffirmed in *United States ex rel. Dunlap* v. *Black*, 128 U. S. 40, in an elaborate opinion by Mr. Justice Bradley. See also *United States ex rel. Redfield* v. *Windom*, 137 U. S. 636; *Boynton* v. *Blaine*, 139 U. S. 306. In *United States* v. *Schurz*, 102 U. S. 378, 396, it was said by Mr. Justice Miller : .

" Congress has also enacted a system of laws by which rights to these lands may be acquired and the title of the Government conveyed to the citizen. This court has with a strong hand upheld the doctrine that, so long as the legal title to these lands remained in the United States and the proceedings for acquiring it were as yet *in fieri*, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere."

The appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the applicant; whether or not he is the proper one to discharge the duties of the position. Therefore it is one of those acts over which the courts have no general supervising power.

In the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment. " It cannot for a moment be admitted that it was the intention of the Constitution that those offices which are denominated

inferior offices should be held during life. And if removable at pleasure, by whom is such removal to be made? In the absence of all constitutional provision or statutory regulation it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment." *In re Hennen*, 13 Pet. 230, 259; *Parsons* v. *United States*, 167 U. S. 324. · Unless, therefore, there be some specific provision to the contrary, the action of the Secretary of the Interior in removing the petitioner from office on account of inefficiency is beyond review in the courts either by mandamus to reinstate him or by compelling payment of salary as though he had not been removed.

The Revised Statutes, sec. 1754, provide :

"Persons honorably discharged from the military or naval service by reason of disability resulting from wounds or sickness incurred in the line of duty shall be preferred for appointments to civil offices, provided they are found to possess the business capacity necessary for the proper discharge of the duties of such offices."

But this does not avail the petitioner. He was preferred for appointment and held under that appointment for years. There was no disregard of that section either in letter or spirit; no evasion of its obligations. He was not appointed on one day and discharged on the next, but after his first appointment continued in service until it was found that he was inefficient.

Section 3 of the act of August 15, 1876, 19 Stat. 169, is :

"That whenever, in the judgment of the head of any department, the duties assigned to a clerk of one class can be as well performed by a clerk of a lower class, or by a female clerk, it shall be lawful for him to diminish the number of clerks of the higher grade and increase the number of the clerks of the lower grade within the limit of the total appropriation for such clerical service : *Provided*, That in making any reduction of force in any of the executive departments, the head of such department shall retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors."

In section 7 of the Civil Service act of 1883 (22 Stat. 406) is this proviso:

"But nothing herein contained shall be construed to take from those honorably discharged from the military or naval service any preference conferred by the seventeen hundred and fifty-fourth section of the Revised Statutes, nor to take from the President any authority not inconsistent with this act conferred by the seventeen hundred and fifty-third section of said statutes."

But these sections do not contemplate the retention in office of a clerk who is inefficient, nor attempt to transfer the power of determining the question of efficiency from the heads of departments to the courts. The proviso in section 3 of the act of August 15, 1876, expressly limits the preference to those "equally qualified."

No thoughtful person questions the obligations which the nation is under to those who have done faithful service in its army or navy. Congress has generously provided for the discharge of those obligations in a system of pensions more munificent than has ever before been known in the history of the world. But it would be an insult to the intelligence of Congress to suppose that it contemplated any degradation of the civil service by the appointment to or continuance in office of incompetent or inefficient clerks simply because they had been honorably discharged from the military or naval service. The preference, and it is only a preference, is to be exercised as between those " equally qualified," and this petitioner was discharged because of inefficiency. That, it may be said, does not imply misconduct but simply neglect, but a neglected duty often works as much against the interests of the Government as a duty wrongfully performed, and the Government has a right to demand and expect of its employés not merely competency, but fidelity and attention to the duties of their positions.

Nowhere in these statutory provisions is there anything to indicate that the duty of passing, in the first instance, upon the qualifications of the applicants, or, later, upon the competency or efficiency of those who have been tested in the service, was taken away from the administrative officers and transferred to the courts. Indeed, it may well be doubted whether that is a

duty which is strictly judicial in its nature. It would seem strange that one having passed a civil service examination could challenge the rating made by the commission, and ask the courts to review such rating, thus transferring from the commission, charged with the duty of examination, to the courts a function which is, at least, more administrative than judicial; and if courts should not be called upon to supervise the results of a civil service examination equally inappropriate would be an investigation into the actual work done by the various clerks, a comparison of one with another as to competency, attention to duty, etc. These are matters peculiarly within the province of those who are in charge of and superintending the departments, and until Congress by some special and direct legislation makes provision to the contrary, we are clear that they must be settled by those administrative officers.

We see no error in the conclusions of the Court of Claims, and its decree is

*Affirmed.*