Howry, J.,
delivered the. opinion of the court:
This cause is one of a class of cases arising out of an order of the Post-Office Department reducing a number of letter carriers on duty at the post-office in Philadelphia, in the State of Pennsjdvania, to the substitute carrier roll. Seventy-five persons are affected by the determination of the questions at issue, of whom 57 have already brought suit in this court. The general facts applicable to this action apply to the cases of all the petitioners.
The finding^ establish plaintiff’s employment as a regular letter carrier of the first class, at a salary of $1,000 a year for his services. Without an}7 fault or misconduct on his part, plaintiff was notified on September 30,1895, by the postmaster at Philadelphia, that thereafter he would until further notice report for duty as a substitute letter carrier. This order was predicated upon an order of the First Assistant Postmaster- *9 General to the postmaster at Philadelphia reducing a number of the regular letter carriers to the substitute carrier roll. The order provided that length of service should determine the relative position of the carriers so reduced for promotion from the substitute roll as vacancies might occur in the regular force according to the length of service. Plaintiff received pay for the services which he performed as a substitute letter carrier, and now sues for the difference between the pay he was receiving as a regular letter carrier and the amount he .was paid while, serving as a substitute.
Although plaintiff was never required to give any other bond than the one he gave when first appointed as a letter carrier, yet he accepted the new service and permitted his name to go upon the substitute roll at the reduced pay without complaint or protest of any kind. He was finally reinstated to his former position as a letter carrier of the first class at the same salary he was receiving at the time he was reduced to the substitute roll.
The want of authority on the part of the Postmaster-General to make the order which accomplished plaintiff’s reduction to the substitute carrier roll is denied. Aside from this general-want of power on the part of the officer in question to make the reduction, it is contended that plaintiff was in the classified service at the time and was therefore protected by the rules and regulations governing the civil service of the Government.
Plaintiff having accepted the terms of the order which took his name from the roll of the regular letter carriers, and having performed duties as a substitute carrier without objection or protest, he therebjT assented to the arrangement. For this substitute work which he performed until his promotion he was duly paid. What steps the Postmaster-General would have taken had the claimant refused to serve as a substitute need not be considered. But plaintiff accepted a place carrying less compensation; he became a substitute without objection, as stated, and in the course of time obtained his reward by promotion. On this ground alone authority is not wanting to hold that plaintiff is now precluded from recovering the pay annexed to the place of a regular carrier, but must *10 stand on the kind of service he agreed to render and for which ho has been compensated. (Chisolm v. The United States, 27 C. Cls. R., 94.)
But it is unnecessary to rest the defense to this demand upon the estoppel created by the plaintiff’s conduct. Aside from that we think the order of the Postmaster-General virtually removed the plaintiff from his place as a regular carrier.
Treating the order as one which removed plaintiff from his regular position, and taking the objections to it in their inverse order, it is true that at the time of plaintiff’s displacement a rule obtained in the Post-Office Department which provided that no carrier should be removed except for cause and upon written charges filed in the Department, and of which the carrier was to have full notice and ah opportunity to make defense. (P. M. G. Order, 11 Rep. Civ. Ser. Com., 37.) Unless there is some specific provision of law which gave plaintiff a permanent place on the regular carrier roll, the removal of the petitioner from that roll is a matter beyond review in the courts, either by mandamus to reinstate or by compelling payment of salary as though he had not been removed. (Keim v. The United States, 177 U. S. R., 290.)
Under the provisions of an act approved March 3, 1887 (19 Stats., 384), it is made the dut}^ of the Postmaster-General to carefully inquire into the number of carriers employed' in the several cities, and to reduce the number of these carriers where free delivery of mail is established and the number of deliveries of the mails by such carriers for each day to the reasonable requirements of the public service.
The act of August 2, 1882 (22 Stats., 185), provided that appointments of letter carriers in cities having two or more classes should he made to the class having the minimum rate of pay, and promotions from the lower grades in said' cities were required to be made to the next higher grade at the expiration of one year’s service on' certificate of the postmaster of the efficiency and faithfulness of the candidate during the preceding year. Substitute carriers were authorized to be appointed by the Postmaster-General, whose compensation should be $1 per annum and the pro rata compensation *11 of the carriers whose routes such substitutes might be required to serve.
Letter carriers at free-delivery offices, by the act of June 27, 1884 (23 Stats., 60), were entitled to leave of absence, not to exceed fifteen days in each year, without loss of pay; and the Postmaster-General was authorized to employ, when necessary, during the time of such leave of absence, such number of substitute letter carriers as might be deemed advisable.
Under section 606 of the act last cited vacancies are filled by the postmaster to the vacant route, of the senior substitute carrier by assignment, and postmasters are not permitted to employ substitutes as temporary carriers without special authority.
’ In the classification of carriers in cities containing a population of 75,000 or more, three classes of letter carriers are provided for, as follows: Carriers of the first class, whose salaries are §1,000 per annum; carriers of the second class, with salaries of §800 per annum, and carriers of the third class with salaries of §600 per annum. (Act of January 2, 1887, sec. 2, 24 Stats., 355.)
All letter carriers are required to give bonds with sureties. (R. S., 3870.) They must all take the oath prescribed by law.
The various statutes bearing upon the subject are set forth in chapter 2 (relating to the postal service) of the Revised Statutes, and vol. 1, Supp. R. S., 362, 366, 446, 519; Postal Laws and Regulations for 1893, 260-262.
Underlying every statute relating to the appointment of carriers and their substitutes is the power conferred upon the Postmaster-General to employ them as frequently as the public convenience may require. The power to regulate includes the power to remove outright, or to reduce the number of regular carriers to the list of substitutes whenever it is necessary to diminish the number of carriers to the reasonable requirements of the service. Whether the order under which plaintiff was displaced from the regular roll be regarded as an order of removal or a mere reduction from one gradé of the service to another, it was for the Postmaster-General to determine the matter according to the reasonable requirements of the service at the office where his action became the *12 subject-matter of complaint. The power to remove or to reduce the number of carriers is necessarily implied in that officer whose duty it became to administer the law. In the case at .bar the findings do not establish anjr abuse of the discretion reposed in the Postmaster-General. In the absence of proof, we must assume that the discretion was lawfully exercised under the statute.
If the removal in this case was lawful, the reduction from one class to- another can not be the subject-matter of complaint. The modification of the order of removal operated for the benefit of the plaintiff. When he was appointed to another position that appointment vacated the office from which he was removed.
All letter carriers are appointed by the Postmaster-General on the nomination and recommendation of the postmaster, under certain regulations as to character, qualification, and application (sec. 602, act August 2, 1882, 22 Stats., 185). They are inferior officers, and their removal by some authority is contemplated in the scheme of their appointment. The power of removal from office is incident to the power of appointment. (In re Hennen, 13 Pet., 230, 259; Parsons v. The United States, 167, U. S. R., 324.)
It has been repeatedly adjudged that the courts have no general supervising power over the proceedings and actions of the various administrative departments of the Government. In Decatur v. Paulding (14 Pet., 497, 515) it is said that the interference of the courts with the performance of the ordinary duties of the Executive Departments of the Government would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to man. This proposition was reaffirmed in the case of Keim v. United States (supra) with reference to a matter similar to that under consideration, and many authorities to the same effect are there cited; and these authorities amply sustain the proposition that in a matter like that before the court we are not at liberty to interfere.
The contention of the plaintiff, that he was appointed as additional carrier, is not sustained by the findings. As a matter of fact, he was reduced to the position of a substitute letter carrier; he reported for duty as such, and his compensation was that of a substitute carrier.
*13 As to the claim' for compensation for those days when plaintiff was required to report at the office at intervals each day to hold himself in readiness for work, there' are no legal grounds for compensation. Plaintiff was upon the substitute roll, and it was a part of the contract of employment with substitute letter carriers that they should hold themselves in readiness at the direction of the postmaster, and, in the exercise of his discretion, to report for duty and await assignment to the substitute service.
The petition is dismissed.