**Donald E. DONOVAN, Plaintiff,**

v.

**UNITED STATES of America, Alan S. Boyd, Individually and as Secretary of Transportation of the United States of America, David D. Thomas, Individually and as Acting Administrator, Federal Aviation Administration, Defendants.**

**Civ. A. No. 2307–68.**

United States District Court
District of Columbia.
March 4, 1969.

———◆———

Donald H. Dalton, Washington, D. C., for plaintiff.

Joseph M. Hannon, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM-ORDER

GASCH, District Judge.

This matter was heard on cross motions for summary judgment on plaintiff's complaint for a declaratory judgment and mandatory judgment ordering the Secretary of Transportation to reinstate plaintiff in his position as General Business Industry Officer, GS–13, in the Federal Aviation Administration and for back pay. There are no material facts in dispute.[1]

On September 25, 1967, plaintiff was hired under a career conditional appointment as a General Business Industry Officer of the Federal Aviation Administration. The appointment was subject to a one year probationary period. Plaintiff's duties during this period involved the drafting of guidelines and procedures for the supervision of Concessionaires at the Capital Airports. During his first three weeks on the job, he was assigned to rewrite the ponderous Federal Aviation Procurement Manual. Plaintiff states in his affidavit that he was given approximately one hour's instruction on the operation of the Concessionaires at the Capital Airports and none at all on the style or content of government reports.

Plaintiff's superior, David Davenport, was absent from the office for 89 days between September 25, 1967, and July 26, 1968. Mr. Davenport did, however, recommend that the plaintiff be enrolled in the official Federal Aviation writing course. The recommendation was denied and no other training recommendations were made. On April 17, 1968, plaintiff's superiors expressed dissatisfaction with his work product and indicated they doubted he possessed the requisite writing skills for the position. They held two conferences with the plaintiff ostensibly to discuss his performance and to suggest means of improvement. Excerpts from the formal memoranda of these conferences, written by plaintiff's editors, are revealing.

The memorandum of the April 17, 1968, meeting relates the following discussion of plaintiff's writing ability:

"He [the plaintiff] felt that the matter had been 'blown up out of proportion,' although he was not able to explain too well as to what, specifically, he meant by this. Mr. Ormsbee stated that in his own view the matter was quite serious and had not been blown up out of proportion. Mr. Donovan attributed some of his evident problems to lack of communication by Mr. Davenport with him."

In a memorandum dated April 24, 1968, describing a meeting held the previous day, Mr. David Davenport states:

"I stressed particularly importance on the caliber of his work in that it lacked depth and detail. In addition, we re-

---

1. The Government's position concedes facts relating to the procedure of the discharge and its limited review. It has argued, however, that nothing else is properly before the Court because the agency has plenary authority during the probationary period. The plaintiff, however, has presented evidence by affidavit and document relating to the conduct of his superiors during this period. To the extent it was well pleaded and factually uncontested, the Court has considered that evidence. See Thompson v. Evening Star, 394 F.2d 774 (D.C.Cir.1968). Alternatively, the Government has argued that the evidence presented is insufficient to prove arbitrary and capricious conduct. That argument, of course, has been considered, see text infra.

viewed together his principal duties and responsibilities as defined in his position description, once again emphasizing that portion of his position that he was specifically assigned in writing to do relative to the development of policies and procedures."

"He failed to provide for a quarterly inspection other than one that consolidated the bi-weekly findings, thereby eliminating any surveillance other than that of a walk-through nature with no analyses of performance made, statements submitted, insurance expiration, submission of capital improvements costs and other matters of importance that require more time and study than week-to-week surveillance indicated. In addition, there was no procedure established for the follow-up of deficiencies noted and reports."

"Mr. Donovan, at this point indicated he could see what I meant regarding clarity and detail. I stated that I had started to re-do this procedure and would turn over to him my recommendations as far as I had progressed for him to study and complete the procedure relative to contract surveillance."

In July, 1968, plaintiff's supervisors reported that he "lacks the ability to plan, develop, and express himself in sufficient depth, detail and completeness to develop procedures to be followed by others and to evaluate their performance." The Chief of the financial management staff advised plaintiff on July 5, 1968, that he would be separated from his position on July 26, 1968.

There is no dispute over the procedural propriety of his dismissal after this point. Rather, plaintiff argues that the agency failed initially to follow its regulations providing for the supervision and training of employees and that in denying him these rights, it acted capriciously and arbitrarily. The decision of his superiors to discharge rather than

to train him, he argues, was not lawful for the reason that it was in violation of the agency's regulations. The Court agrees.

The FAA, pursuant to executive direction and congressional authorization has established an elaborate network of procedures for the supervision and training of its personnel.[2] 49 U.S.C. § 1354(d) empowers the agency "to conduct a school or schools for the purpose of training employees of the agency." 5 U.S.C. § 41 provides further authority and Executive Order 11348, April 20, 1967, adds executive support for such programs.

These provisions have been implemented with the formulation of guidelines published, by agency order, in the FAA Handbook. The guidelines or regulations provide, in part, that "Determining employee training needs is a positive supervisory requirement." (FAA Handbook 3430.2, 1/6/66).

"Each supervisor shall:

(a) Develop job performance standards with each employee he supervises.

(b) Systematically review performance and keep the employee informed as to his performance achievements.

(c) Determine employee development needs and meet them as necessary by:

1. Providing on-the-job counsel, training and instructions.

2. Requesting off-the-job training for the employee.

3. Encouraging employee to study at his own expense.

4. Arranging for assignments, such as job rotations, to provide additional experience.

(d) As requested, use information gained from performance review in other personnel management programs.

(e) Periodically review the performance standards for each employee he su-

2. See also, e. g., Agency Handbook PTP 3400.2, Employee Performance Improvement; Agency Handbook 3410.4, Career Planning Program; Agency Handbook 3430.1, Employee Performance Rating; Agency Handbook 3430.2, Employee Appraisal Consolidation; Government Employees Training Act (P.L. 85–507, July 7, 1958) 5 U.S.C. §§ 4101–4118.

pervises and with him make appropriate changes in the standards.

(f) While holding management positions, insure that, for employees in watchstanding positions and similar positions in which an employee may have different immediate supervisors from day to day, the number of supervisors is kept to a minimum. Management is encouraged to assign one supervisor to whom the employee looks for primary guidance within this program even though he may have several immediate supervisors in the course of a relatively short period."

■ The language of these guidelines is commanding; their formulation official. There can be no doubt from their face and from the legislative history of the authority upon which they are predicated that they are mandatory.[3] Under Thorpe v. Housing Authority, 89 S.Ct. 518, they must be followed.[4]

The plaintiff has presented facts indicating they were not followed. He stated in his affidavit that he was given little or no supervision, explanation or introduction to his work and that his supervisor was frequently absent during the critical period. It is apparent that the thrust of his superiors criticism was that he lacked government-style writing skills. Significantly, he was not permitted to take the FAA training course in writing. A review of the memoranda of the conferences which were held among plaintiff and his superiors, taken in the light most favorable to the Government, even though they are self-serving and not attested to, indicates that they fell far short of the training and

supervision contemplated by the regulations.

The Government argues that all procedural rights were accorded the plaintiff and that for the Court to inquire further would constitute an improper imposition on the agency officials of the Court's judgment as to the plaintiff's job qualifications.[5] Generally the Court agrees.

■ The Government draws from this, however, the conclusion that where an employee is discharged during the probationary period for the announced reason that he lacks basic skills, the discharge cannot be arbitrary and capricious and cannot be reviewed. The error in this conclusion is that the agency has materially qualified its position by ordering that supervisors will follow particular procedures in the training and assistance of employees on new assignments.[6] These procedures must be followed and may be reviewed by the Court. An administrator may not pick and choose among those regulations he is instructed to follow. If a discharge is effected without strict observance of applicable regulations, that discharge is unlawful.

In this case, it appears that the plaintiff was not afforded the supervisory training required by the regulations. Accordingly, it is by the Court this 4th day of March, 1969.

Ordered that the motion of the Government for summary judgment be and it is denied, and it is further

Ordered that the motion of the plaintif be and it is granted.

3. *See* City of Lebanon v. Dale, 113 Ind. App. 173, 46 N.E.2d 269 (1943) ; Utilities Engineering Inst. v. Bodenstein, 129 N.J.L. 249, 29 A.2d 197 (1942).

4. *See also,* Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) ; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

5. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900) ; Studemeyer v. Macy, 116 U.S.App.D.C. 120, 321 F.2d 386 (1963).

6. *See* Semaan v. Mumford, 118 U.S.App. D.C. 282, 335 F.2d 704 (1964).