Joseph E. PAIGE, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of the Department of Housing and Urban Development, et al., Defendants.

No. 77 C 3950.

United States District Court, N. D. Illinois, E. D.

Dec. 2, 1977.

James C. Murray, Jr., Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Joseph Paige has a long history of federal employment. From 1957 to 1969 he was a trial attorney with the Department of Justice. Since 1970 he has been an attorney with the Department of Housing and Urban Development ("HUD"). On September 7, 1971, he was appointed Area Counsel for the Chicago Area Office of HUD. Paige remained in that position until September 29, 1977, when he received a memorandum of the termination of his appointment as Area Counsel. After receipt of this Notice, he was informed by the Chief Administrative Officer for the Chicago Office of HUD that there existed no internal rights of appeal, nor a right to submit any statement or evidence in his own defense.

Mr. Paige filed a complaint accompanied by a Motion for a Temporary Restraining Order, or in the Alternative, for a Preliminary Injunction in an effort to prevent the termination of his employment. In support of his argument, Mr. Paige argued that: (1) he has a protected property interest in his position as Area Counsel and his termination without a hearing violated his right to due process of law; (2) that independent of any tenure rights he is entitled to a hearing because his termination adversely reflects upon his good name and reputation; and (3) that because HUD chose to give him a statement of reasons for his discharge, HUD is required to follow procedures adopted for termination "for cause".

In response, the Government argues that: (1) Mr. Paige has no property interest in his position and as a non-veteran with a Schedule A appointment in the Excepted Service he may be summarily dismissed, (2) that

Mr. Paige's termination, though it may limit future employment opportunities does not affect his reputation so as to require a hearing, and (3) that the statement detailing the reasons for Mr. Paige's termination was gratuitous and did not set HUD "adverse action" procedures in motion.

After initial oral argument, the parties entered into an agreement to maintain the status quo. During the period covered by the agreement, the parties were given leave to file simultaneous briefs in support of their respective positions. The briefs as submitted, as well as our own research, indicated that while plaintiff's second and third arguments involved questions of law, a factual question could exist as to whether HUD had established a "de facto" tenure system which Mr. Paige reasonably believed would protect his employment. On·November 28, 1977, a hearing was held and the parties were given an opportunity to present evidence on this limited factual issue. The Government, maintaining its position that the question of Mr. Paige's property interest in his employment is solely a question of law, presented no evidence, relying exclusively on its brief and exhibits attached thereto. Plaintiff submitted to the Court six exhibits consisting primarily of excerpts from the HUD Handbook, Intra-Agency Memoranda, and the Memorandum of Termination.

The most pressing question raised by the present motion is whether Mr. Paige has a protected property interest in his position. If so, there is no question that before terminating his employment, HUD would be required to provide Mr. Paige an opportunity for a full and fair hearing. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

■ Generally, attorneys in the federal government do not have a protected property interest. Plaintiff does not refute the Government's position that as a non-veteran, Schedule A employee in the Excepted Service, he is not protected by Civil Service. Ordinarily this would mean that plaintiff could be dismissed summarily with no right of appeal within the agency or to the District Court. *Committee for Protection of First Amendment Rights of Dept. of Agriculture Employees v. Bergland*, 434 F.Supp. 314 (D.C.1977). However, plaintiff argues that by reason of the fact that HUD has granted him "permanent tenure", he has a claim of entitlement to his position as Area Counsel.

■ To date, the most significant case stating the law governing an employee's right to procedural protection of his employment is *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). In *Roth*, the Supreme Court clarified the source and scope of property interests in the context of employment rights:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. 408 U.S. at 577, 92 S.Ct. at 2709.

There is nothing in *Roth* that requires, in every instance, that a plaintiff prove the existence of an express contractual arrangement granting tenure. Indeed, in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971) the Supreme Court, elaborating upon *Roth*, held that a property interest in employment could arise from mutual understandings or implied agreements. In *Perry*, a school teacher who had been dismissed after nine years of employment argued that though the school expressly disclaimed any tenure system, that by its actions and certain provisions in the Faculty Guide[1] and guidelines promul-

---

1. The paragraph in the Faculty Guide upon which plaintiff based his reliance read:

> *Teacher Tenure*: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work. 408 U.S. at 600, 92 S.Ct. at 699.

gated by the Coordinating Board of the Texas College and University System, it had created a "de facto" tenure system. This de facto tenure system, plaintiff argued, was reasonably relied upon by faculty members with long service and thus had created a property interest as worthy of protection as more formally created interests. Agreeing with plaintiff, the Court stated that a legitimate claim of entitlement might be shown "from the circumstances of this service—and from other relevant facts" including rules, mutually explicit understandings or implied agreements. 408 U.S. at 602, 92 S.Ct. at 2700.

█ In the present case, there is no question that Congress chose not to provide Mr. Paige with tenure or any property interest in his employment. However, Mr. Paige asserts tenure rights based on language found in the HUD Handbook. It is his position that although Congress has not granted him job tenure, HUD has sought to create job security for its attorneys by establishing an Agency level tenure system. In effect, Section 302.2 of the HUD Handbook, entitled Tenure of Attorneys, sets out a process by which HUD attorneys achieve "permanent tenure" status after three years of service with the agency. It is these provisions Mr. Paige argues, which entitle him to a hearing prior to his employment termination.

In response, the Government argues that tenure as delineated by the Handbook is merely a system for the orderly and efficient release of employees by reduction in force. In other words tenure in this context is merely a method to determine the order in which employment will be terminated when it becomes necessary to reduce the size of the staff. In support of this position, the Government submitted to the court a copy of Chapter 351 of the Federal Personnel Manual entitled Reduction in Force. In that document tenure is described as one of several factors to be considered when determining an employee's retention

standing in his level during reduction in force. As the Government points out in its brief, the tenure language in Section 302.2 of the HUD Handbook is almost verbatim the language of Chapter 351.

Assuming that HUD has the authority to grant property interests in employment to employees in the Excepted Service absent a Congressional mandate, the resolution of very serious constitutional questions depends on the correct interpretation of "permanent tenure" as used in the HUD Handbook. Following the Supreme Court's analysis in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971), this Court held a hearing on the question of whether *in fact* Section 302.2 had been reasonably relied upon by Mr. Paige as establishing a de facto tenure system guaranteeing him job security. If that were the case, the fact that HUD intended only to establish a systematic method to achieve reduction in force would, arguably, be irrelevant.

This Court need not reach that question, however, because plaintiff has failed to make any showing of reasonable reliance on the alleged de facto tenure system. Nothing in the evidence presented by plaintiff can be said to support his argument. Other than Section 302.2 itself, the exhibits submitted by plaintiff have no bearing on this question. There is no doubt that Congress has not given plaintiff job tenure. It was incumbent upon Mr. Paige, therefore, to prove the existence of a de facto tenure system and his reasonable reliance upon that system. Plaintiff has failed to make that proof. There is nothing in the record to warrant a finding that HUD has vested Paige with a property interest in his position such that would require a hearing prior to terminating his employment.

█ Plaintiff also argues that independent of tenure rights he is entitled to a hearing on his termination because in the Memorandum of Termination, HUD has attacked his good name and professional reputation. In support of this argument he

principally relies on *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970). In that case, the Supreme Court held unconstitutional on its face a Wisconsin statute which authorized certain persons to forbid the sale of alcohol to one who "by excessive drinking" became "dangerous to the peace" of the community, 400 U.S. at 434, 91 S.Ct. 507. Pursuant to the statute, the Chief of Police in Hartford, Wisconsin, posted a notice in all liquor stores forbidding the sale of alcohol to plaintiff. Holding that the statute violated plaintiff's procedural due process rights, the Court stated:

> Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. 400 U.S. at 437, 91 S.Ct. at 510.

In the present case, the Memorandum of Termination contained very serious allegations directed at Paige's professional qualifications. It is quite understandable that he would be concerned that the Memorandum could adversely affect his future employment opportunities. However, as the Supreme Court noted in *Board of Regents v. Roth*:

> Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of "liberty". Cf. *Shware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, 408 U.S. at 574, n. 13, 92 S.Ct. at 2708.

Unlike the situation in *Shware*, plaintiff has not been completely precluded from finding future employment. Nor, like *Constantineau*, has Mr. Paige been publicly ridiculed and stigmatized. Indeed, the Government has represented to the Court that the Memorandum will not be placed in Mr. Paige's official personnel folder and is completely confidential. Accordingly, this Court finds that Paige's assertion of a liberty interest is without support and his employment termination without a hearing was proper. *Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971).

■ Finally, Paige argues that by giving him a statement of reasons for his discharge, HUD had in effect, treated him as a non-excepted employee and must now follow through by providing him full procedural protections. Plaintiff finds support for this position by drawing an analogy between the present case and *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). The analogy, however, is inappropriate.

In *Vitarelli*, the Supreme Court held that an employee who could otherwise be summarily discharged, was entitled to a hearing because his discharge was based on "security grounds". There existed, at the time, a regulation which provided for a hearing whenever any employee was discharged on security grounds. Even though petitioner in that case could have been summarily discharged, having chosen to proceed on security grounds, the agency was bound by its regulations and was required to grant petitioner a hearing.

In the present case, no such regulation exists. Unlike in *Vitarelli*, HUD has not conferred "important procedural benefits upon individuals in the face of otherwise unfettered discretion." *American Farm Lines v. Black Ball Freight Service, et al.*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1969). The Memorandum of Termination received by Mr. Paige was merely a gratuitous act and in no way entitled him to additional rights.

Accordingly plaintiff's Motion for a Preliminary Injunction is denied. Furthermore, construing defendants' Memorandum in Opposition to plaintiff's Motion as a motion to dismiss pursuant to Rule 12(b)(6) F.R.C.P., the Court finds that plaintiff fails to state a claim upon which relief can be based. The cause is dismissed. Judgment is entered for the defendants.