731 So.2d 749 (1999)
Michael BLAKE, Cindy Gennell, et al., Appellants,
v.
Paul PARTYKA, et al., Appellees.
No. 98-1856.
District Court of Appeal of Florida, Fifth District.
April 1, 1999.
Rehearing Denied May 17, 1999.
*750 Arthur J. England, Jr., and Paul C. Savage, of Greenberg Traurig, P.A., Miami, for Appellants.
Michael D. Jones of Leffler & Associates, P.A., Winter Springs, for Appellee Paul Partyka.
PETERSON, J.
The individual City Commissioners of the City of Winter Springs, and the City of Winter Springs (the city), appeal the trial court's order declaring that the appellee, the mayor of the City of Winter Springs (the mayor), has the authority to remove the city attorney and appoint a successor for the approval of the city commission.
This dispute arose after the mayor attempted to dismiss the city attorney over the objection of the city commission. The city asserts that the mayor does not have unilateral authority to remove the city attorney.
The relevant portions of the Charter of the City of Winter Springs provide:
ARTICLE IV. MAYOR AND CITY COMMISSION
* * *
Section 4.05 Mayor.
The mayor shall act and serve as chairman of the city commission, shall be chief executive officer of the city, shall preside at its meetings, shall be recognized as the head of its city government for all ceremonial purposes and be governor for the purposes of military law....
* * *
The mayor shall not vote except in the case of a tie vote of the commission. Within ten (10) days after the adoption of any ordinance by the city commission, the mayor shall have the power to veto said ordinance and return it to the commission at the next regular meeting with a written message. It shall require four-fifths (4/5) vote of the city commission to pass the ordinance after the mayor's veto.
Section 4.06. General Powers and Duties.
All powers of the city shall be vested in the commission except as otherwise provided by law or this Charter, and the commission shall provide for the exercise thereof and for the performance of the duties and obligations imposed on the city by law.
* * *
Section 4.10. City clerk.
The mayor shall appoint an officer of the city who shall have the title of city clerk and who shall be approved by the city commission. The city clerk shall give notice of commission meetings ... and perform such other duties as are assigned to him by this Charter or by the commission.
ARTICLE V. CITY MANAGER
Section 5.01. Appointment; qualifications, compensation.
The commission may appoint a city manager for an indefinite term and fix his compensation.... In the event the commission does not appoint a city manager, the administrative duties shall be the responsibility of the mayor unless otherwise provided in this Charter.
Section 5.02. Removal.
The commission may remove the city manager by motion of the city commission requiring four (4) affirmative votes: the city manager shall receive thirty (30) days severance pay in all such cases.
Section 5.03. Powers and Duties of the City Manager.

*751 The city manager shall be the chief administrative officer of the city. He shall be responsible to the commission for the administration of all city affairs placed in his charge by or under this Charter.
ARTICLE VI. ADMINISTRATIVE DEPARTMENTS.
* * *
Section 6.02. City Attorney.
There shall be a city attorney appointed by the mayor and approved by the city commission, who shall represent the city in all legal proceedings and shall perform all other duties assigned to him by the city commission.
[Emphasis added].
The charter provides that the mayor shall, subject to the approval of the commission, make two appointments, that of the city attorney and that of city clerk. The charter also provides that only the commission can appoint a city manager. The charter prescribes the manner in which the city manager is to be removed, but is silent about the procedure to be used to remove either the city attorney or city clerk.
The trial court followed the principle established in Keim v. U.S., 177 U.S. 290, 35 Ct.Cl. 628, 20 S.Ct. 574, 44 L.Ed. 774 (1900) and Shurtleff v. U.S., 189 U.S. 311, 23 S.Ct. 535, 47 L.Ed. 828 (1903), that a power to appoint, absent any legislative intent to the contrary, carries with it the power to remove. In Keim, the Secretary of the Interior discharged a clerk in his department. The Supreme Court approved of the Secretary's exercise of this authority, concluding that "[i]n the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment." 177 U.S. at 293, 20 S.Ct. 574. In Shurtleff, the President of the United States sought to remove a federal official. The Shurtleff Court stated:
It cannot now be doubted that, in the absence of constitutional or statutory provision, the President can, by virtue of his general power of appointment, remove an officer, even though appointed by and with the advice and consent of the Senate. (Citations omitted). To take away this power of removal in relation to an inferior office created by statute, although that statute provided for an appointment thereto by the President and confirmation by the Senate, would require very clear and explicit language. It should not be held to be taken away merely because of inference or implication. Congress has regarded the office as of sufficient importance to fill it by a proper appointment by the President and confirmed by the Senate. It has thereby classed it as appropriately coming under the direct supervision of the President, and to be administered by officers appointed by him (and confirmed by the Senate), with reference to his constitutional responsibility to see that the laws are faithfully executed.
189 U.S. 311, 314-15, 23 S.Ct. 535, 47 L.Ed. 828.
We disagree with the application of the rationale in Keim and Shurtleff to the instant dispute. Here, the position of the mayor is largely ceremonial and the city commission, under its charter form of government, has delegated nearly all administrative functions to a city manager. Under this form of government, the city attorney is not under the direct supervision of the mayor.
In Myers v. U.S., 272 U.S. 52, 119, 47 S.Ct. 21, 71 L.Ed. 160 (1926), the Supreme Court cited to the earlier Shurtleff case and explained the reason why, under Article 2 of the United States Constitution, the Executive's power to appoint carried with it the power of removal: "The reason for the principle is that those in charge of and responsible for administrating functions of government, who select their executive subordinates, need in meeting their responsibility to have the power to remove *752 those whom they appoint." Id. In the instant case, the mayor under the charter, is given few administrative responsibilities. The mayor assumes the responsibility of the administrative duties of the city manager only "in the event the city commission does not appoint a city manager" and only if no contrary provision exists elsewhere in the charter. Art. IV § 4.05. In Article V, pertaining to the office of city manager, section 5.04 specifies that the manager "shall designate, subject to approval by the commission, a qualified city officer to exercise the powers and perform the duties of manager during his temporary absence or disability" and that "[d]uring such absence or disability the commission may revoke such designation at any time and appoint another officer of the city to serve until the manager shall return or his disability shall cease."
The mayor's powers are set forth in section 4.05 of the Charter. This section first indicates that the mayor is a part of the city commission and "shall act and serve as chairman of the city commission." It goes on to clarify, however, that while the mayor presides over the meetings of the city commission his or her actual voting power is special and limited:
The mayor shall not vote except in case of a tie vote of the commission. Within ten (10) days after the adoption of any ordinance by the city commission, the mayor shall have the power to veto said ordinance and return it to the commission at the next regular meeting with a written message. It shall require four-fifths (4/5) vote of the city commission to pass the ordinance after the mayor's veto.
The government of the City of Winter Springs is run on a day to day basis by the city manager. We believe that policy decisions such as the retention or dismissal of the city manager or the city attorney are, in contrast, to be made by the city commission. The mayor has a unique role on this city commission. He or she acts as its leader but lacks some of the power given to an ordinary commissioner in that voting, other than by veto, is allowed only when the commissioners' votes result in a tie. The grant to the mayor in section 6.02 of the power to appoint the city attorney amounts to nothing more than the power to nominate, since the appointment must be approved by the city commission.
We disagree with the trial court's conclusion that the mayor, under the charter, has the authority to remove the city attorney. The terms of the charter do not support that conclusion. The Keim and Shurtleff cases, as the Myers case notes, allow for the inference of the power of removal where the executive has a power of appointment and the executive is, in fact, in charge of the administration of the governmental entity at issue. The mayor's seat in the City of Winter Springs is a weak mayor position in that the city's charter sets forth a commission/city manager form of government as opposed to a strong mayor/no city manager type government. A review of the charter strongly suggests that policy decisions affecting the city as a whole are to be determined not by the mayor alone but by the commission as a whole.
We hold that the power to remove the city attorney lies within the general provisions of section 4.06, which simply and clearly state that "all powers not otherwise designated by this Charter or law vest in the commission." Accordingly, we reverse the trial court's order finding that the mayor has the unilateral authority to remove the city attorney.
REVERSED.
DAUKSCH and COBB, JJ., concur.