**Gordon A. MARTIN, Jr., Plaintiff,**

v.

**Ronald REAGAN, et al., Defendants.**

**Civ. A. No. 81–1714–S.**

United States District Court,
D. Massachusetts.

Sept. 8, 1981.

Terry Philip Segal, Martin, Morse, Wylie & Kaplan, Boston, Mass., for plaintiff.

Donald R. Anderson, Asst. U. S. Atty., Larry L. Simms, Deputy Asst. Atty. Gen., Benna Solomon, Dept. of Justice, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER· FOR JUDGMENT

This action seeks to enjoin the President of the United States from terminating plaintiff's one-year appointment to the National Institute of Justice Advisory Board prior to the expiration of plaintiff's term. The case is currently before me on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss or, in the alternative, for summary judgment.

The facts are not in dispute. In response to a perceived inadequacy in the federal justice research effort, the Congress created the National Institute of Justice and the National Institute of Justice Advisory Board pursuant to the Justice System Improvement Act of 1979, Pub.L.No.96–157, 42 U.S.C. §§ 3701 *et seq.* The National Institute of Justice (hereinafter "NIJ") was placed within the Department of Justice "under the general authority of the Attorney General". 42 U.S.C. § 3722(a). The principal purpose of the NIJ is "to engage in and encourage research and development to improve and strengthen the criminal justice system and to disseminate the results of such efforts to Federal, State, and local governments". 42 U.S.C. § 3721. To achieve this objective, the NIJ is authorized to make grants to and enter into agreements with institutions and individuals performing research in the criminal justice field, as well as to conduct its own research. 42 U.S.C. § 3722(c). The Director of the NIJ is "appointed by the President, by and with the advice and consent of the Senate" and has "final authority over all grants, cooperative agreements, and contracts awarded by the Institute". 42 U.S.C. § 3722(b).

The National Institute of Justice Advisory Board (hereinafter "Advisory Board") "consists of twenty-one members who shall be appointed by the President". 42 U.S.C. § 3724(a). Its duties are to

(1) recommend the policies and priorities of the Institute;

(2) create, where necessary, formal peer review procedures over selected categories of grants, cooperative agreements and contracts;

(3) recommend to the President at least three candidates for the position of Director of the Institute in the event of a vacancy; and

(4) undertake such additional related tasks as the Board may deem necessary.

42 U.S.C. § 3724(d).

The term of office of each member is three years "except the first composition of the Board which shall have one-third of these members appointed to one-year terms, one-third to two-year terms, and one-third to three-year terms". 42 U.S.C. § 3724(c).

On November 7, 1980, then-President Jimmy Carter made the initial appointments to the Advisory Board, selecting plaintiff to serve a one-year term. On June 1, 1981, however, plaintiff was informed that the new President, Ronald Reagan, desired to reconstitute the Advisory Board and requested plaintiff's resignation at his "early convenience". Plaintiff rejected the President's request and sent a letter explaining his reasons to the Attorney General on June 2, 1981. On June 26, 1981, the Deputy Attorney General sent plaintiff a mailgram stating that "the President has determined that your service on the National Institute of Justice Advisory Board is no longer required[;] effective this date your appointment to the Board is terminated". The plaintiff's appointment was not scheduled to expire until November 6, 1981. No meeting of the Advisory Board has been convened to date.

The issue presented by these facts is whether the President may remove plaintiff from his position without cause prior to the expiration of plaintiff's one-year term. Plaintiff argues that the legislative history of the Justice System Improvement Act of 1979 reveals a clear intent on the part of Congress to insulate Advisory Board members from the President's removal power. The defendants take the position that Congress had no such intent, and that even if it did, such a restriction on the President's removal power would violate the separation-of-powers principle of the Constitution.

Although the Constitution is silent as to the removal power of the President, it is well established that "[i]n the absence of specific provision to the contrary, the power of removal is incident to the power of appointment". *In re Hennen*, 38 U.S. (13 Pet.) 230, 259, 10 L.Ed. 138 (1839); *see also Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). The initial inquiry in a removal power case, therefore, is whether Congress sought to restrict the President's exercise of such power.

A difficulty often encountered in this type of case is that the Congress has failed to express any intent on the subject of removal from office. The Supreme Court was faced with this situation in *Wiener v. United States*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958). There, President Eisenhower dismissed the plaintiff from his position as a member of the War Claims Commission, an organization created by Congress to adjudicate certain claims relating to World War II, prior to the expiration of his term. The legislation establishing the Commission lodged the appointment of commissioners in the President's hands, but was silent as to the removal power. In the face of this silence, the Court noted, it was necessary to infer what Congress intended with respect to removal. Recognizing that this was a "problem in probabilities", the Court stated that "the most reliable factor for drawing an inference regarding the President's power of removal in our case is the nature of the function that Congress vested in the War Claims Commission". 357 U.S. at 353, 78 S.Ct. at 1278. Previous cases had made a sharp distinction between "purely executive" functions, for which the President's power of removal had to be unfettered, and quasi-judicial or quasi-legislative functions, which "require absolute freedom from Executive interference". *Id.; see Humphrey's Executor v. United States*, 295 U.S. 602, 631–632, 55 S.Ct. 869, 875, 79 L.Ed. 1611 (1935). On the facts in *Wiener*, the Court found that the adjudicatory nature of the War Claims Commission's tasks created an inference that "Congress did not wish to have hang over the Commission the Damocles' sword of removal by the President for no reason other than that he preferred to have on that Commission men of his own choosing". 357 U.S. at 356, 78 S.Ct. at 1279. Accordingly, it held that the Presi-

dent did not have the power to remove plaintiff. *Id.*

The Justice System Improvement Act of 1979 does not expressly delineate the President's removal power with respect to members of the Advisory Board. The Advisory Board's functions, however, fall into the category of "purely executive". The sole tasks of the Board are to recommend policies, create peer review procedures, and recommend candidates for the position of Director of the NIJ. None of these tasks require "absolute freedom from Executive interference". *Weiner, supra.* This conclusion is bolstered by an examination of the NIJ itself. The NIJ was placed within the Justice Department "under the general authority of the Attorney General". 42 U.S.C. § 3722(a). The Director of the NIJ serves at the pleasure of the President, as Congress did not establish a fixed term of office for him. Given the measure of control that the President exercises over the NIJ, it is unlikely that Congress intended to insulate the Advisory Board from presidential authority.[1]

Accordingly, I rule that the Justice System Improvement Act does not prohibit the President from dismissing members of the National Institute of Justice Advisory Board and that the President's removal of plaintiff from the Advisory Board was within the scope of his powers. Plaintiff's motion for a preliminary injunction is DENIED. Defendant's motion for summary judgment is ALLOWED and judgment shall be entered for defendants forthwith.

---

[1] Contrary to plaintiff's assertion, the legislative history of the Act does not reveal an intent on the part of Congress to restrict the President's removal power. At most, it suggests that Congress wanted to keep the NIJ separate from other groups within the Department of Justice itself, not the President. See S.Rep.No. 96–142, 96th Cong., 1st Sess., pp. 50–51, *reprinted in* 1979 U.S.Code Cong. & Admin.News 2471, 2520–22.