# The President's Power to Remove Members of the Federal Council on the Aging

The text and legislative history of the statute creating the Federal Council on the Aging indicate that Congress did not intend to restrict the President's power to remove his appointees to the Council. Neither the Council's "independence" in terms of its membership and staff, nor its function of providing advice to Congress necessarily suggest that Congress intended to restrict the President's power of free removal which is ordinarily incident to his power of appointment.

Because the structure and functions of the Federal Council on the Aging establish that it is a purely executive body, Congress could not constitutionally limit the President's power to remove its members.

November 13, 1981

## MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion whether the President has the power to remove the members of the Federal Council on the Aging (the Council). In the absence of any evident congressional intent to limit the President's power of removal, and on the basis of well-settled principles of constitutional law, we conclude, for reasons set forth below, that the President does have the power to remove Council members.

### I. The Council

The Council is established pursuant to 42 U.S.C. § 3015 (1976 & Supp. III 1979). Its fifteen members are appointed by the President with the advice and consent of the Senate to serve three-year terms. *Id.* § 3015(a). According to the statute, members "shall be appointed so as to be representative of rural and urban older Americans, national organizations with an interest in aging, business, labor, and the general public. At least five of the members shall themselves be older individuals." *Id.* § 3015(a). Since 1978 amendments, no full-time officer or employee of the federal government may be appointed as a member of the Council, *id.* 42 U.S.C. § 3015(a) (Supp. III 1979); and the Secretary of Health and Human Services and the Commissioner on Aging are no longer *ex officio* members of the Council. The statute does not expressly provide for removal of Council members, nor does it expressly insulate them from removal at the pleasure of the President.

Because the nature of the functions performed has come to be the focus of the removal power as a matter of determining both congressional intent and the limits of congressional power to restrict the President's power to remove his appointees, we set out the Council's duties in full. As prescribed by statute, the Council shall:

(1) advise and assist the President on matters relating to the special needs of older Americans;

(2) assist the Commissioner [on Aging] in making the appraisal of [personnel] needs [in the field of aging] required by section 3032 . . .;

(3) review and evaluate, on a continuing basis, Federal policies regarding the aging and programs and other activities affecting the aging conducted or assisted by all Federal departments and agencies for the purpose of appraising their value and their impact on the lives of older Americans;

(4) serve as a spokesman on behalf of older Americans by making recommendations to the President, to the Secretary [of Health and Human Services], the Commissioner, and to the Congress with respect to Federal policies regarding the aging and federally conducted or assisted programs and other activities relating to or affecting them;

(5) inform the public about the problems and needs of the aging, in consultation with the National Information and Resource Clearing House for the Aging, by collecting and disseminating information, conducting or commissioning studies and publishing the results thereof, and by issuing publications and reports; and

(6) provide public forums for discussing and publicizing the problems and needs of the aging and obtaining information relating thereto by conducting public hearings, and by conducting or sponsoring conferences, workshops, and other such meetings.

42 U.S.C. § 3015(d) (1976 & Supp. III 1979).

The Council is further directed to undertake a thorough study and evaluation of federal and federally assisted programs for older Americans, including

(A) an examination of the fundamental purposes of such programs, and the effectiveness of such programs in attaining such purposes;

(B) an analysis of the means to identify accurately the elderly population in greatest need of such programs; and

(C) an analysis of numbers and incidence of low-income and minority participants in such programs.

42 U.S.C. § 3015(g)(2) (Supp. III 1979). The study may also include

(A) an exploration of alternative methods for allocating funds under such programs to States, State agencies on aging, and area agencies on aging in an equitable and efficient manner, which will accurately reflect current conditions and insure that such funds reach the areas of greatest current need and are effectively used for such areas;

(B) an analysis of the need for area agencies on aging to provide direct services within the planning and service area; and

(C) an analysis of the number of nonelderly handicapped·in need of home delivered meal services.

42 U.S.C. § 3015(g)(3) (Supp. III 1979).

The statute also authorizes staff personnel for the Council and requires the head of each federal department and agency to provide the Council with information and other assistance. 42 U.S.C. § 3015(e) (Supp. III 1979). At least annually, and more often as the Council deems advisable, the Council is required to report its findings and recommendations to the President, who then transmits the report to Congress, with his comments and recommendations. *Id.* § 3015(f).

## II. Statutory Interpretation

In the context of a statute that is silent on the issue of the President's removal power, it is sometimes difficult to separate the statutory analysis from the constitutional analysis. Nevertheless, we focus initially on the statutory scheme and the legislative history because of the familiar injunction that decision on constitutional grounds should be avoided if a statutory ground is sufficient. *See Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The statute itself, as we have noted, is silent on the question of removal. Nevertheless, the history of the Council indicates that Congress could not have intended that its members would not be freely removable by the President.

The Council is the most recent successor to various presidential advisory commissions on the aging. National conferences on aging were held in 1950 and 1952. On March 21, 1956, President Eisenhower summarized recent and proposed actions of the federal government affecting older citizens and announced his intention to create a federal council on aging. Established in April 1956, this first council was composed of representatives of various government agencies. The council called for another conference on aging, which was held in June

1956. Following two congressionally authorized studies of problems related to the aging, the White House Conference on Aging Act of 1958 (Pub. L. No. 85-908, 72 Stat. 1746) was passed to provide for a White House Conference on Aging, to be called by the President in 1961. The Conference made recommendations for continuing and expanding federal and state programs for the elderly, including establishment of a federal coordinating agency. *See generally* S. Rep. No. 247, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad. News 1884.

As a follow-up to the Conference, President Kennedy established the President's Council on Aging in May 1962. Exec. Order No. 11,022, 3 C.F.R. 602 (1959-1963 Comp.). This Council was also composed of Cabinet officers and other federal officials and was directed to study the problems of the aging and make recommendations to the President for policies and programs.

The first statutory authority for an advisory council on aging was provided by the Older Americans Act of 1965, 42 U.S.C. § 3001 *et seq.* (1976 & Supp. III 1979) which established an Advisory Committee on Older Americans comprised of the Commissioner on Aging and fifteen members appointed by the Secretary of Health, Education, and Welfare (HEW). The Committee was to advise the Secretary on matters bearing on his responsibilities under the Act and related activities of the Department of HEW. Members were selected with experience in the field of interest in the particular problems of aging. *See generally,* H.R. Rep. No. 1203, 92d Cong., 2d Sess. 8 (1972); H.R. Rep. No. 1150, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S. Code Cong. & Ad. News 3388, 3392. In 1967, the Secretary was authorized to provide staff for the Advisory Committee.

By 1972, Congress noted that the problems, issues, and recommendations of the White House Conference on Aging went far beyond the activities of the Department of HEW. The House Committee on Education and Labor accordingly recommended the establishment of a presidential advisory committee. The bill, H.R. 15657, 92d Cong., 2d Sess. (1972), would have replaced the Advisory Committee with a national advisory council to "advise and assist the President on matters relating to the special needs of older Americans." The Senate version of the bill would have established the Older Americans Advocacy Commission, "charged with the duty of advocating the interests of older Americans throughout the whole range of federal activities." *See* H.R. Rep. No. 43, 93d Cong., 1st Sess. 10, *reprinted in* 1973 U.S. Code Cong. & Ad. News 1327, 1336. The Commission would also have been empowered to evaluate existing programs to inform the public about the needs and concerns of the aging and the relevant federal activities. *Id.*

The bill as it emerged from the conference committee was the origin of the present Federal Council on the Aging. The committee adopted that name and consolidated the functions as provided in the House and Senate bills. The bill was later vetoed by the President, but it provided the basis for the 1973 amendments to the Older Americans Act of 1965, which did establish the Council. The House committee in 1973 repeated the conference statement that " '[i]t is the intention of the conferees that this body function as more than a passive advisory body, and that it work to actively promote the interests of older Americans throughout the whole range of federal policies and programs affecting them.' " 1973 U.S. Code Cong. & Ad. News, *supra,* at 1336. The Council was further charged with undertaking three studies of benefit programs, taxes, and transportation needs.

The Older Americans Act was amended again in 1978. The House report explained that "[a]s a spokesman and advocate on behalf of the elderly, the committee believes that the Council should have a greater degree of independence." 1978 U.S. Code Cong. & Ad. News, *supra,* at 3398. The changes that were made "to strengthen the independence of the Council," *ibid.,* were precluding full-time employees of the federal government from membership on the Council and specifically authorizing staff for the Council. The first change was intended "to eliminate the potential for conflicts of interest" and thereby improve the Council's objectivity in making recommendations. *Id.* at 3398. The second change was designed to relieve the Council's dependence for staff on the Administration on Aging in the belief that the Council "could be more effective in obtaining information on advising the President and the Congress." *Id.* at 3399.

At no time in the long evolution of the present Council did Congress express any intent to limit presidential control, including removal, over the membership. Prior to the statutory authorization in 1965, of course, there could have been no serious contention whatsoever that the presidential appointees were not freely removable. And at no time in the course of enacting the various statutes creating or affecting the Council did Congress ever express a contrary belief or intent.

We do not regard the latest House report's use of the word "independence" as requiring a different conclusion.[1] The report specifically explains that the "independence" desired for the Council would affect its relationship to other federal agencies, especially the Commission on Aging, and not the President. This "independence," in terms of Council membership and staff, would avoid conflicts of interest and improve the objectivity and efficiency of the Council. Recognizing the President's

---

[1] The concept of "independence" also appears in the context of the description of the Older Americans Advocacy Commission as created by the Senate version of the 1972 bill. Whatever was meant by the reference, however, the structure did not prevail in the conference committee, which adopted the House version. *See* S. Conf. Rep. No. 1287, 92d Cong., 2d Sess. 46 (1972). The bill, in any event, was vetoed.

341

power to remove creates no conflict of interest. Successor appointees must still exclude full-time federal employees. Nor does removal of the Council's members directly affect its staff. In any event, "independence" was desired with the specific intent to improve the Council's ability to perform its duty of advising the President. The relationship and responsiveness of the Council to the President was strengthened, not weakened. The removal power is consistent with this relationship.[2]

### III. Constitutional Analysis

We examine briefly the relevant principles of constitutional law by way of reinforcing our conclusion that the statute does not limit the President's power to remove Council members.[3]

We start with the long established rule that "[i]n the absence of all constitutional provision or statutory regulation, it would seem to be a sound and necessary rule, to consider the power of removal as incident to the power of appointment." *In re Hennen,* 38 U.S. (13 Pet.) 230, 259 (1839); *see also Myers* v. *United States,* 272 U.S. 52 (1926); *Sampson* v. *Murray,* 415 U.S. 61, 70 n.17 (1974). The mere specification of a term of office is not such a specific provision. *See Parsons* v. *United States,* 167 U.S. 324 (1897); *Martin* v. *Tobin,* 451 F.2d 1335 (9th Cir. 1971). Under the general rule, the President's power to appoint the Council members empowers him to remove them.[4]

Exceptions to this rule are narrowly defined. Congress can constitutionally restrict the President's power to remove a federal officer only if he or she is a member of a so-called "independent" agency, not part of the Executive Branch, and the agency's primary functions are quasi-legislative or quasi-judicial and "require absolute freedom from Executive interference." *Wiener* v. *United States,* 357 U.S. 349, 353 (1958); *see Humphrey's Executor* v. *United States,* 295 U.S. 602 (1935).

Although closely allied to the Commission on Aging, which is established in the Office of the Secretary of Health and Human Services, *see* 42 U.S.C. § 3011(a) (1976 & Supp. III 1979), the Council is not expressly lodged within an executive department. The Council's func-

---

[2] We attribute very little significance to the fact that the Council, as recently as 1978, was thought to be a source of advice to Congress itself. Congress may, of course, utilize its own committees for the gathering of information, or it may, through its own offices, appoint advisory committees to assist it in the performance of its legislative functions. If, however, Congress creates by statute an advisory body whose primary responsibility is to advise the Executive and, in doing so, Congress places the power of appointment in the President, we believe that Congress must be assumed to have been aware that as a practical matter, the appointees would be dependent on the President as appointing authority, rather than Congress, and that as a constitutional matter, the power of free removal would inhere in the structure chosen.

[3] The statute, of course, must be construed to avoid an unconstitutional result. *International Ass'n of Machinists* v. *Street,* 367 U.S. 740, 749 (1961); *Crowell* v. *Benson,* 285 U S. 22, 62 (1932).

[4] The requirement under the statute of Senate advice and consent to the presidential appointees does not in and of itself limit the President's power of removal. *Cf. Myers* v. *United States,* 272 U.S. 52, 119–25 (1926).

tions, however, leave no doubt that it is executive in nature. We examine both what the Council does and what it does not do.

By congressional intent expressed in the legislative history and by design embodied in the statute, the Council is an advisory body. It was intended, and its duties as prescribed by statute effectuate the intent, that the Council advise, assist, review, evaluate, advocate, inform, and study. The recipients of the Council's advice, assistance, and recommendations are primarily the President, the Secretary of Health and Human Services, and the Commissioner on Aging; [5] and generally, the advice, assistance, and recommendations are intended to enhance the recipient's own performance of statutory responsibilities. In the context of examining the nature of the functions of another advisory body created to advise an executive department, the District Court for the District of Massachusetts recently recognized that giving advice and making recommendations "fall into the category of 'purely executive.' " *Martin* v. *Reagan*, 525 F. Supp. 110, 113 (D. Mass. 1981) (National Institute of Justice Advisory Board). *See also Patino* v. *Reagan*, Civil No. S-81-469 MLS (E.D. Cal. Sept. 29, 1981) (same).

If the executive nature of the Council's duties left any doubt regarding the inability of Congress to limit the President's power to remove its members, any such doubt is overcome by the fact that the Council performs no quasi-legislative or quasi-judicial functions as those functions are described in the cases. *See Humphrey's Executor* v. *United State, supra;* [6] *Wiener* v. *United States, supra.* [7] In short, there is no basis for concluding that the Council's functions "require absolute freedom from Executive interference." *Wiener,* 357 U.S. at 353.

In sum, the text and history of the statute, as interpreted in light of the relevant constitutional principles, impose no limitation on the President's power to remove members of the Council. The President, therefore, has authority to remove them at his pleasure.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] Reports to Congress are passed first to the President for his comments and recommendations. *See* 42 U.S.C. § 3015(f).

[6] Members of the Federal Trade Commission were held to be protected from removal because the Commission was "an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, and to perform other specified duties as a legislative or as a judicial aid." 295 U.S. at 628.

[7] Members of the War Claims Commission were held to be protected from removal because they had the responsibility to adjudicate claims against the United States "according to the law," *i.e.,* "on the merits of each claim, supported by evidence and governing legal considerations." 357 U.S. at 355.